UNITED STATES of America, Appellee,

v.

Ronald HODGE, Appellant.

No. 93–3012.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 7, 1994.

Decided March 25, 1994.

Richard Seligman (appointed by the court), Washington, DC, argued the cause and filed the briefs for appellant.

Steven D. Mellin, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the briefs were J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, John R. Fisher, Thomas C. Black and Rene Y. Webb, Asst. U.S. Attys., Washington, DC.

Before: EDWARDS, BUCKLEY, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Ronald Hodge was convicted, after a jury trial, of possession with intent to distribute a substance containing cocaine base (21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii)), and possession of marijuana (21 U.S.C. § 844(a)). The prosecution's case rested on evidence—the cocaine and the marijuana—taken from Hodge during a warrantless search, the legality of which Hodge disputes. The only issue we reach concerns the trial court's handling of the suppression hearing. Hodge complains that the court unduly restricted his examination of several police officers.

The officers' testimony supported the following version of the events leading up to the search. Hodge and his traveling companion, Antonio Jackson, arrived in Washington on a bus from New York City at about 11:00 p.m. Both were carrying white plastic bags. Detective Hairston first spotted them at the bus

station as they were disembarking. He saw the pair walk through the terminal and out to the street, where they were met by four or five other men. Detective Hairston watched for a few more moments as the group walked toward a parking lot. He then returned to the bus station and sought the assistance of Officer Ray and Detective McNamara. Both detectives were in casual clothing; Officer Ray was in uniform. The three officers drove in a police cruiser for a short distance when they found Hodge, Jackson and another individual crossing the street. The officers simultaneously exited the car. Detective Hairston walked at a fast pace toward Hodge. As he drew near he held up his police identification folder so that Hodge could see it. Detective McNamara headed for Jackson; Officer Ray went for the other man, Kyle Pryce.

According to Detective Hairston, he asked Hodge if he could talk to him. Hodge said "yes." The detective asked to see his bus ticket. Hodge handed it over. The detective took a quick look at the ticket and returned it. In response to Detective Hairston's questions, Hodge said the plastic bag he was carrying belonged to him and that there were no drugs in the bag or on his person. Detective Hairston could see a blue "Adidas" shoe box in the bag. In the detective's words: "I asked Mr. Hodge for permission to search his person and the white plastic bag, and he gave me permission to search his person and the plastic bag by saying 'yes.' I searched the plastic bag, and inside the Adidas shoe box was a pair of sneakers. Inside of one of sneakers were two plastic bags of rock substance and two ziplocks of marijuana. At that point, I placed Mr. Hodge under arrest."

Whether Hodge gave his consent before, during or after the events described next is not clear from the officers' testimony. Detective McNamara's encounter with Antonio Jackson took a turn when the detective, "shortly" after he began interviewing Jackson, spotted a firearm in a box Jackson was opening. Detective McNamara, testifying as a defense witness, described what happened: "What I did was jumped behind him real

fast, and put him up against a tree, just said, drop the box, drop the box."

At some point, Officer Ray engaged the other individual, Kyle Pryce, and patted him down for weapons. The officer testified that he was about 15 to 20 feet away from Detective Hairston at the time.

Several times the defense tried to elicit testimony from Detective Hairston and Detective McNamara showing that Hodge must have seen and heard what the officers were doing with Jackson and Pryce. Each time the district court sustained the government's objections. Defense counsel sought to inquire about the "show of force with regard to the other individuals," the "surrounding circumstances," in order to refute the notion that his client voluntarily consented. When defense counsel so argued to the court, the court replied the "objection is still sustained." (Tr. 24–25, 27, 35–37, 41–42.)

At the close of the hearing, the court denied the motion to suppress, stating that it found the officers credible. The court stated no other "essential findings on the record." Rule 12(e), Fed.R.Crim.P.

■ There is no doubt the district court cut off a pertinent line of inquiry. In determining the legality of the search, the court had to consider what was occurring when Detective Hairston asked Hodge for permission to examine his bag: "whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973). Furthermore, an encounter between the police and an individual is immune from Fourth Amendment constraints only so long as it remains consensual. *See Florida v. Bostick*, 501 U.S. 429, ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). The nature of Detective Hairston's exchange with Hodge thus matters. So does the "environment in which it took place" (*Schneckloth*, 412 U.S. at 247, 93 S.Ct. at 2058). Because of the court's rulings, defense counsel did not have a chance to inquire into the full extent of that environment. He was able to elicit testimony about what the other officers were doing,

but when the court sustained the government's objections, this precluded him from showing—through the arresting officers—the sequence of events and the ability of Hodge to perceive what was happening nearby. It is no answer to say, as the government does, that the defense had the opportunity to establish this through Hodge when he testified at the hearing. The district court chose to believe the officers, finding them "more credible than the defense witnesses." If the defense was to convince the court that the atmosphere was so intimidating that it vitiated Hodge's consent, the defense had to do so through the officers.

 The government, of course, had the burden of showing that Hodge's consent was given freely and voluntarily. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968). Hodge, on the other hand, had the right to cross-examine the government's witnesses and to call his own. The Rules of evidence do not generally apply to suppression hearings. *See* Fed.R.Evid. 104(a); *see also United States v. Matlock,* 415 U.S. 164, 172–73, 94 S.Ct. 988, 993–94, 39 L.Ed.2d 242 (1974). But we have held that a suppression hearing is a "critical stage of the prosecution" affecting substantial rights of an accused. *United States v. Green,* 670 F.2d 1148, 1154 (D.C.Cir.1981). For that reason, any limitations on the right of cross-examination "(beyond the typical evidentiary rules limiting its scope to the subject matter of direct examination and to matters affecting witness credibility, Fed.R.Evid. 611(b)) must be justified by weighty considerations." 670 F.2d at 1154. In cutting off defense counsel's cross-examination of Detective Hairston and his examination of Detective McNamara, the district court cited no such considerations, and we are unable to perceive any. Despite its objections during the hearing, the government now admits that defense counsel's line of questioning sought relevant evidence. We therefore remand the case to the district court for a new evidentiary hearing on the motion to suppress.*

*Remanded.*

Detective Hairston searched Hodge's white plastic bag, the other officer had discovered Hodge's companion's gun in the box pulled from a similar bag he was carrying.

---

* We do not, and on this record cannot, resolve the issue, raised in oral argument, whether apart from consent, the search of Hodge would have complied with the Fourth Amendment if, before