**UNITED STATES of America, Appellee,**

**v.**

**William D. HILL, Appellant.**

**No. 96-3113.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 14, 1997.

Decided Dec. 23, 1997.

Evelina J. Norwinski, Assistant Federal Public Defender, Washington, DC, argued the cause for appellant, with whom A.J. Kramer, Federal Public Defender, was on the briefs. Lisa B. Wright, Assistant Federal Public Defender, entered an appearance.

Carolyn E. Becker, Assistant United States Attorney, Washington, DC, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, John R. Fisher,

Thomas C. Black, and Robert A. Spelke, Assistant United States Attorneys, were on the brief.

Before: EDWARDS, Chief Judge, WALD and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

Concurring opinion filed by Circuit Judge RANDOLPH.

WALD, Circuit Judge:

Appellant William D. Hill was arrested by police after he fled from his car carrying a gun following a traffic stop for allegedly failing to display a Vehicle Identification Number ("VIN") on the temporary tags of his recently purchased car. In the district court, Hill filed a motion to suppress the handgun discovered by police in the yard where he threw it after fleeing the car, arguing that it was the fruit of an illegal search. The district court denied the motion, and Hill entered a conditional plea of guilty to one count of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1)(1994). The district court imposed a sentence of 96 months in prison followed by a three-year term of supervised release. Hill now seeks review of the district court's denial of suppression of the handgun and challenges the sentence imposed by the court. We hold that the district court failed to apply the correct legal standard in determining that the traffic stop was legal and therefore denied Hill's motion to suppress on an improper ground. Additionally, we hold that the district court impermissibly relied solely on the indictment in concluding that Hill's prior conviction for attempted robbery constituted a "crime of violence" and thus improperly set Hill's base sentencing offense level at 24. Accordingly, we reverse the conviction and remand for further proceedings consistent with this opinion.

## I. Background

On the evening of November 7, 1995, Hill was traveling southbound on 11th Street near Irving Street in Northwest Washington, D.C. in a car that he had recently purchased. The car was driven by a friend of Hill's; Hill was in the front passenger seat and two additional passengers were in the back. At approximately 9:20 p.m., two officers in a patrolling police car observed the car, which one of the officers later testified did not have a VIN on its temporary D.C. tags. The police activated their emergency lights to stop the car, but the car continued for one and a half blocks before stopping.

At the suppression hearing, the arresting officer testified that after the car stopped, Hill jumped out of the passenger side of the car, took a few steps, and then slipped on the wet ground. The officer saw a silver handgun fall from Hill's waist area and land in front of him. According to the officer, Hill picked up the gun and ran down the street into an alley. After a brief chase during which the police observed Hill throw the gun over a high fence, the police seized Hill. They later found the gun in a yard near the alley in which they apprehended Hill. During the police officers' chase of Hill, the car drove off with the remaining passengers. As a result, the police did not have an opportunity to verify the temporary tag number or the absence of a VIN on the tags. *See* Transcript of Motions Hearing and Plea Agreement at 12–24, 31–32 (Mar. 25, 1996) ("Tr.").

Harry Proctor, a records historian for the D.C. Department of Motor Vehicles, testified at Hill's trial that Department records indicated that a set of temporary tags were issued to the auto dealer that sold the car to Hill, and then to Hill when he purchased the car.[1] Tr. at 40–42. Hill testified that the

1. Apparently, Hill did not provide the car dealership with the identification ordinarily required of a new owner. According to Proctor, the dealer is supposed to get identification from the new owner and include that person's driver's license number on the temporary registration. Instead, the registration for the temporary tag submitted by the car dealership that sold the Chevy to Hill included the driver's license number of Darrin Gilliam, a friend of Hill's who accompanied him to the dealership. In addition, the application for title, which must contain the social security number of the owner, contained a number that "came up no record" of a driver's license. (In the District of Columbia, a person's driver's license number is generally identical to his or her social security number.) Moreover, although the D.C. government usually makes a copy of identi-

temporary tags issued in his name contained a VIN when they were issued and that the VIN was on the tags on the night of the arrest. Tr. at 72, 82–83. The tags contained a VIN at the time they were entered into evidence by Hill's counsel. *See* Appendix for Appellant at 15–16 (Defendant's Exhibit 2) ("App.").

Hill filed a motion to suppress the handgun on the grounds that it was the fruit of an unlawful traffic stop. The district court denied the motion after a hearing. Hill then entered a conditional guilty plea to Count One of the grand jury's indictment—which charged Hill with possession of a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1)—while reserving the right to appeal the court's adverse suppression ruling. The court thereafter ordered that a presentencing report be prepared.

The presentencing report recommended an offense level of 24 based on the fact that Hill had two prior felony convictions that qualified as a "crime of violence" under U.S.S.G. § 2K2.1 (1997). At the sentencing hearing, defense counsel argued for an offense level of 20, noting that one of the convictions—for attempted robbery under D.C. law—should not count as a "crime of violence" because it was remote in time and did not have as an element the use of physical force. The court found that Hill's conviction for attempted robbery qualified as a "crime of violence" under U.S.S.G. § 2K2.1 and determined on that basis that Hill's offense level was 24. Accordingly, the court sentenced Hill to 96 months in prison, followed by a three-year term of supervised release.

## II. Analysis

### A. *The Motion to Suppress*

Hill filed a motion to suppress the handgun discovered by police after the stop of Hill's car arguing that its seizure was the fruit of an unlawful stop. The district court denied the motion to suppress on the ground that the police officer that stopped Hill's car believed that he had violated the traffic laws. Hill challenges the district court's decision, claiming that the district court applied a subjective, rather than objective, reasonableness test to the actions of the officers in this case. We agree that the district court failed to make any findings regarding the objective reasonableness of the officer's decision to stop Hill's car, and we therefore reverse the district court's denial of the motion to suppress the handgun and remand for consideration of whether it was objectively reasonable for the officers that observed Hill's car to conclude that a traffic violation had occurred.[2]

The Supreme Court has held that "[a]n automobile stop is ... subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States,* 517 U.S. 806, ——, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). It is well-settled that in evaluating the reasonableness of a particular traffic stop, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). In other words, reasonable suspicion to stop and search a motorist depends on "the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." *Ornelas v. United States,* 517 U.S. 690, ———, 116 S.Ct. 1657, 1661–62, 134 L.Ed.2d 911 (1996). The constitutional reasonableness of a traffic stop therefore does not depend on the actual motivations of the individual officers involved. *See Whren,* 517 U.S. at ——, 116 S.Ct. at 1774. Instead, the relevant determination is whether the "circumstances, viewed objec-

fication for its files, there was no copy of any identification belonging to Hill with the registration documents. *See* Tr. at 50–64.

2. In reviewing a denial of a motion to suppress, "[w]e review the trial court's findings of fact under a clearly erroneous standard and its legal conclusions *de novo.*" *See United States v. Garrett,* 959 F.2d 1005, 1007 (D.C.Cir.1992).

tively, justify" the action taken. *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978); *see Whren,* 517 U.S. at ——, 116 S.Ct. at 1774.

Here, the district court denied Hill's motion to suppress the gun because it found that the police officer that stopped the car believed that the temporary tags on the car did not contain a VIN. At the district court hearing, Hill submitted the temporary tags and bill of sale for his car, both of which contained a VIN. In addition, Hill testified that he had seen the dealer write the VIN on the temporary tags, that he had seen the dealer put the tags on his car, that the tags had not been tampered with, and that the tags were on his car the night of the stop. *See* Tr. at 69, 72, 82–83, 86. There was, however, testimony by a police officer indicating that he thought that the tags might have been altered. *See* Tr. at 25. Faced with this conflicting evidence, the court concluded that it was impossible to determine whether Hill's temporary tags actually had a VIN on them at the time Hill's car was stopped. The court therefore decided to base its suppression decision on the testimony of the parties involved in the stop, choosing to credit the officer's testimony that "he believed that the car did not have a VIN number," *see* Tr. at 136, over the testimony of Hill. The court explained:

> . . . The evidence that I have heard indicates that a police officer believed that a vehicle was using the streets of the District of Columbia and that vehicle had temporary tags on it and that the officer did not see a VIN number.
>
> I can't say whether the tags had a VIN number on them or not. But I know I can accept as true the officer's testimony that he believed that the car did not have a VIN number.

*Id.*

We agree with Hill that the district court failed to apply the correct test to the officer's decision to stop Hill's car. The above-quoted portion of the transcript indicates that the district court applied a subjective reasonableness test to the officer's decision to stop Hill's car, rather than the objective reasonableness test that is required in such situations. The court noted that it accepted the officer's testimony that "he believed that the car did not have a VIN number," but the court never explicitly stated whether or not this belief was objectively reasonable. Indeed, the record before us contains no information regarding the conditions under which the officer first observed Hill's car—*e.g.,* how far away the police cruiser was from Hill's car at the time the officer first observed the tags, the quality of the lighting, how quickly Hill's car was moving, etc.—and whether, given those conditions, it was objectively reasonable for the officer to conclude that the tags were missing a VIN.[3] We therefore reverse the district court's denial of Hill's motion to suppress and remand to the district court for a determination of whether it was objectively reasonable for the officer that observed Hill's car to conclude that a traffic violation had occurred. *See United States v. Williams,* 951 F.2d 1287, 1291 (D.C.Cir.1991) (noting that remand to the district court is appropriate where neither the legal reasoning nor factual findings supporting the denial of a motion to suppress are apparent because it is not clear "[o]ne, that the district court asked the right legal questions in making its ruling; two, that it actually weighed the evidence bearing on the facts needed to answer them"); *see also United States v. Dale,* 991 F.2d 819, 840 (D.C.Cir.) (per curiam), *cert. denied,* 510 U.S. 1030, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993) (noting that court had previously remanded to the district court for clarification of its legal conclusions and factual findings); *United States v. Jordan,* 951 F.2d 1278, 1283

3. It was not necessary for the court to determine whether or not a VIN actually appeared on Hill's temporary tags at the time of the traffic stop. Even if the court assumed that, contrary to the testimony of the police officer, the tags contained a VIN at the time of the stop, the stop was still permissible as long as the officer's belief that the VIN was missing was objectively reasonable. *See Hill v. California,* 401 U.S. 797, 804, 91 S.Ct. 1106, 1111, 28 L.Ed.2d 484 (1971) (noting that "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment"); *United States v. Glover,* 725 F.2d 120, 122 (D.C.Cir.), *cert. denied,* 466 U.S. 905, 104 S.Ct. 1682, 80 L.Ed.2d 157 (1984) (quoting *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484).

(D.C.Cir.1991) (remanding for clarification of factual finding), appeal after remand, 958 F.2d 1085 (D.C.Cir.1992); *United States v. Garrett,* 720 F.2d 705, 710 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1311, 79 L.Ed.2d 708 (1984) (noting that " 'where the correctness of the lower court's decision depends upon a determination of fact which only a [fact-finder] could make but which has not been made, the appellate court cannot take the place of the [factfinder]' ") (citation omitted). The district court may hold a new hearing to make the appropriate factual findings and to determine whether the stop complied with the relevant legal and constitutional standards. *See United States v. Hodge,* 19 F.3d 51, 53 (D.C.Cir.1994) (remanding to district court for a new evidentiary hearing on a motion to suppress).

If the district court concludes that under the circumstances it was objectively reasonable for the police to believe that the car did not have a VIN on its temporary tags, we agree with the government that the absence of the VIN did " 'warrant a man of reasonable caution in the belief' " that a traffic stop was justified. *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880. The District of Columbia traffic regulations require that a VIN be placed on all temporary tags. The D.C. Municipal Regulations state that "[s]pecial use identification tags shall contain ... [a] description setting forth the vehicle's trade name, model, year as given by the manufacturer, body type, and vehicle identification number." 18 D.C. Mun. Reg. § 426.11 (1995). It is irrelevant that under the D.C. municipal regulations, the car dealer is required to "prepare a special use certificate by printing or typing all of the information required on the certificate," D.C. Mun. Reg. § 506.7 (1995). Regardless of whom the regulations are directed to, the absence of a VIN on temporary tags can provide a sufficient reason to "suspect a violation of traffic laws" and therefore to stop the car for further investigation. *United States v. Mitchell,* 951 F.2d 1291, 1295 (D.C.Cir.1991), *cert. denied sub. nom. Zollicoffer v. United States,* 504 U.S. 924, 112 S.Ct. 1976, 118 L.Ed.2d 576 (1992). Indeed, we have repeatedly found that " '[e]ven a relatively minor offense that would not of itself lead to an arrest can provide a basis for a stop for questioning and inspection of the driver's permit and registration.' " *Id.* (citations omitted).[4]

B. *Sentencing*

Hill claims that the base sentencing offense level recommended in the presentencing report and adopted by the district court below is incorrect. The base sentencing offense level, Hill contends, should be set at 20, rather than at 24, because his 1976 conviction for attempted robbery was incorrectly designated as a "crime of violence." In particular, Hill argues that the offense of attempted robbery in D.C. is broad and includes non-violent offenses and therefore cannot constitute a "crime of violence" for purposes of setting Hill's base offense level under the sentencing guidelines. In response, the government argues that the substance of the indictment to which Hill pled guilty (albeit to a lesser included offense) makes clear that the offense was properly classified as a crime of violence. Contrary to the government's claim, we find that when a defendant pleads guilty to a lesser included offense of the offense charged in the indictment and the statutory definition of the lesser offense allows conviction for conduct that does not meet the definition of a "crime of violence," the indictment alone does not provide a sufficient basis for designating an offense a "crime of violence." We therefore reverse the district court's decision to set Hill's base sentencing level at 24 and remand for reconsideration of whether Hill's 1976

4. This conclusion is consistent with decisions of this and other courts holding that expired license tags, *Pennsylvania v. Mimms,* 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977) (per curiam), absence of a license plate, *United States v. Russell,* 655 F.2d 1261, 1263 (D.C.Cir.1981), *vacated in part on other grounds,* 670 F.2d 323 (D.C.Cir.1982), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2909, 73 L.Ed.2d 1317 (1982), an illegible expiration date on a tag, *United States v. Hill,* 458 F.Supp. 31, 32 (D.D.C.1978), and the absence of a front tag, *Lewis v. United States,* 632 A.2d 383, 388 n. 12 (D.C.App.1993), justified the police officers' decisions to engage in a traffic stop.

conviction for attempted robbery was properly classified a "crime of violence." [5]

The sentencing guidelines provide for a base offense level of 24 if the offender has two prior felony convictions of a "crime of violence." U.S.S.G. § 2K2.1(a)(2). A "crime of violence" is defined in the sentencing guidelines as an offense, punishable by more than one year in prison, that:

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1). The commentary to the guidelines further explains that the term "crime of violence" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2 Commentary 1.

Hill bases his challenge to his base sentencing offense level on the Supreme Court's decision in *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and this court's decision in *United States v. Mathis,* 963 F.2d 399 (D.C.Cir. 1992).[6] As this court noted in *Mathis, Taylor* established that "when deciding whether a prior conviction qualifies as a predicate offense, the sentencing court must look only to the statutory definition, not to the underlying facts or evidence presented." *Mathis,* 963 F.2d at 408 (citing *Taylor,* 495 U.S. at 602, 110 S.Ct. at 2160). The courts " 'should *not* examine the actual conduct underlying the offense' when determining whether to include it as a predicate offense under § 924(e).' " *Id.* (citation omitted). The court may consider only the statutory definitions of the offenses of which the defendant has been convicted; the particular circumstances under which the predicate crime was committed are irrelevant in determining whether the conviction was for a felony that includes as an essential element the use, attempted use or threatened use or physical force. *See Taylor,* 495 U.S. at 600–02, 110 S.Ct. at 2159–60. Alternatively, the sentencing court can consider the charging documents and jury instructions. *See id.* at 602, 110 S.Ct. at 2160. As the *Taylor* Court explained:

> We therefore hold that an offense constitutes 'burglary' for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant.

*Id.*

In *Mathis,* this court applied these principles to hold that "robbery" as defined in D.C.Code Ann. § 22–2901, includes conduct that is not a "violent felony" as defined by section 924(e). *See* 963 F.2d at 409. That is, because the offense of "robbery" includes a non-violent taking " 'by sudden or stealthy seizure or snatching,' " the offense cannot be classified as a "violent felony" under section 924 on the basis of its statutory definition alone. *Id.* at 408–09. As this court explained, " 'stealthy seizure' under section 22–2901 is not a 'violent felony' within the meaning of § 924(e), because the proof required to satisfy the element of force in the local statute falls below that which Congress intended in enacting § 924(e)." *Id.* at 409. This court remanded to the district court for a determination of whether the indictment and/or jury instructions required the jury to find use or threatened use of physical force in order to convict the defendant of the offense of "robbery."

5. The district court's determination that a prior conviction qualifies as a "crime of violence" under U.S.S.G. § 2K2.1 is a question of law we review *de novo. See United States v. Mathis,* 963 F.2d 399, 404 (D.C.Cir.1992).

6. Although *Taylor* and *Mathis* involved the interpretation of 18 U.S.C. § 924(e), rather than § 4B1.2 of the sentencing guidelines, the cases are nonetheless controlling here because the language defining a "violent felony" under § 924(e) is identical in all relevant respects to the language defining a "crime of violence" under § 4B1.2 of the sentencing guidelines. Indeed, § 4B1.2 of the sentencing guidelines was explicitly derived from § 924(e). *See* U.S.S.G. app. C, amend. 268.

The case at hand resembles *Mathis* in some aspects. Hill pled guilty to an unindicted offense, "Count K," which charged simply "attempted robbery." This offense is a lesser included offense of Count Two of the indictment, which charged "robbery by force and violence and against resistance and by putting in fear." App. at 33–36. The statute to which Hill pled guilty defines attempted robbery as: "Whoever attempts to commit robbery, as defined in § 22–2901, by an overt act, shall be imprisoned for not more than 3 years or be fined no more than $500, or both." D.C.Code. § 22–2902. The statute includes attempts to commit robbery "by sudden or stealthy seizure or snatching." D.C.Code § 22–2901. Thus, as in *Mathis*, the defendant was convicted of an offense that includes non-violent crimes. Consequently, the statutory definition of the offense for which Hill was convicted does not meet the definition of a "crime of violence."

This case differs from *Mathis*, however, in two important ways. First, Hill pled guilty to the offense of attempted robbery, therefore there were no jury instructions to which the sentencing court could refer to determine whether Hill's conviction met the definition of a "crime of violence." Second, Hill pled guilty to a lesser included offense of the indicted offense, rather than to the indicted offense itself. Consequently, although the indictment of Hill does suggest that the attempted robbery of which Hill pled was not committed "by sudden or stealthy seizure or snatching," [7] it is inappropriate for the sentencing court to rely upon this indictment alone as the basis for a determination that the offense constituted a crime of violence. The rationale for this principle is clear: The crime charged is not the crime of which the defendant was convicted.[8] It is therefore impossible for the court to know, without more, what aspects of the indicted offense can be appropriately read into the lesser included offense to which the defendant pled guilty. Moreover, as the *Taylor* Court itself noted, "if a guilty plea to a lesser ... offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty [to the charged conduct]." *Taylor*, 495 U.S. at 601–02, 110 S.Ct. at 2160.

This does not mean, of course, that a defendant can escape application of U.S.S.G. § 2K2.1(a)(2) by simply pleading guilty to a lesser included offense of a charged offense. Several circuits have considered what to do in the situation where a defendant pleads guilty to an offense, and there is no jury instruction to examine. They have concluded that the government may use some means other than a jury instruction to establish that a prior conviction resulted from a burglary involving force for purposes of base offense level enhancement under section 924(e). Eight circuits have held that where no jury instruction is available, the court may examine various court documents to determine whether a prior conviction resulted from a crime of violence.[9] Such an approach, these

7. Count Two of the indictment reads: "On or about February 28, 1975, within the District of Columbia, William D. Hill, Jr., and Herman B. Brisbon, by force and violence and against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of Ricky Chaviz, property of value belonging to Ricky Chavis, consisting of money." App. at 36.

8. *See United States v. Bennett*, 108 F.3d 1315, 1317 (10th Cir.1997) ("The fact that [the defendant] was charged with a crime of violence ... is not dispositive for sentencing purposes.... '[T]he conduct of which the defendant *was convicted* [not charged] is the focus of the inquiry.' "); *United States v. Spell*, 44 F.3d 936, 940 (11th Cir.1995) (holding that "a district court may not rely on a charging document without first establishing that the crime charged was the same crime for which the defendant was convicted"); *cf. United States v. Arnold*, 58 F.3d 1117, 1124 (6th Cir.1995) (holding that when a defendant pled *nolo contendere* to a lesser included offense of an indicted offense, the district court could examine "only those charges in the indictment that are essential to the offense to which defendant entered his plea" and the defendant's plea agreement) (citation omitted).

9. *See United States v. Harris*, 964 F.2d 1234, 1236 (1st Cir.1992) (noting that where defendant has pled guilty, sentencing court can look to the indictment, guilty plea, or presentence report to determine whether a prior offense constitutes a predicate offense); *United States v. Damon*, 127 F.3d 139, 147–48 (1st Cir.1997) (noting that if the statute of conviction, charging instrument, and jury instructions do not indicate whether the offense is a crime of violence, the sentencing court may look to other "accurate, judicially

courts have noted, is consistent with the principles established in *Taylor* and with the guidelines and commentary thereto. We agree. We therefore hold that in determining whether a prior conviction constitutes a predicate offense for purposes of U.S.S.G. § 2K2.1(a)(2) when the statutory description of the offense includes non-violent as well as violent crimes and when the defendant has pled guilty to a lesser included offense of a charge in the indictment, the sentencing court may not rely solely on the indictment

noticeable sources"); *United States v. Garza*, 921 F.2d 59, 61 (5th Cir.), *cert. denied*, 502 U.S. 825, 112 S.Ct. 91, 116 L.Ed.2d 63 (1991) (noting that the "absence of jury instructions in a guilty plea setting does not negate the application of the second half of *Taylor*'s generic burglary rubric"); *United States v. Kaplansky*, 42 F.3d 320, 322 (6th Cir.1994) (en banc) ("When the defendant's conviction is by way of guilty plea, it is appropriate under *Taylor* to look to the indictment and guilty plea."); *United States v. Maness*, 23 F.3d 1006, 1009–10 (6th Cir.), *cert. denied*, 513 U.S. 906, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994) (reviewing transcript of guilty pleas and indictments to determine whether defendant actually committed generic burglary when he pled guilty to charges that contained all of the elements of a generic burglary); *United States v. Rutherford*, 54 F.3d 370, 372 n. 4 (7th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 323, 133 L.Ed.2d 224 (1995) ("If necessary to resolve an ambiguity in the charging document, the courts may also, in some circumstances, examine the presentence report, plea agreement, or factual findings of the sentencing court."); *United States v. White*, 997 F.2d 1213, 1217–18 (7th Cir.1993) (examining charging paper and preliminary hearing transcript in effort to determine whether the district court properly counted a burglary conviction for sentence enhancement purposes); *United States v. Gallman*, 907 F.2d 639, 645 n. 7 (7th Cir.1990), *cert. denied*, 499 U.S. 908, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991) (noting that when faced with an ambiguous statute, "a court should refer to the 'indictment or information and jury instructions,' or, in the case of a guilty plea, to the plea agreement or transcript, in order to determine if the conviction was for 'generic' ... burglary"); *United States v. Taylor*, 932 F.2d 703, 708 (8th Cir.), *cert. denied*, 502 U.S. 888, 112 S.Ct. 247, 116 L.Ed.2d 202 (1991) (noting that the absence of jury instructions in guilty plea proceedings does not negate the application of the second half of *Taylor*'s generic burglary rubric); *United States v. Bonat*, 106 F.3d 1472, 1476 (9th Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 192, — L.Ed.2d — (1997) (holding that because "there are no jury instructions to consider when a defendant has pled guilty, courts must be able to consider documents other than the charging paper and the jury instructions," including the indictment, judgment of conviction, a signed guilty plea, plea transcript and other " 'documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes' ") (citation omitted); *United States v. Wood*, 52 F.3d 272, 275 (9th Cir. 1995), *cert. denied*, — U.S. —, 116 S.Ct. 217, 133 L.Ed.2d 148 (1995) (holding that "sentencing courts may consider the statutory definition of the crime, any conduct charged in the indictment or information, the defendant's guilty plea or plea agreement, and any jury instructions"); *United States v. Hill*, 53 F.3d 1151, 1154 (10th Cir.) (en banc), *cert. denied*, — U.S. —, 116 S.Ct. 258, 133 L.Ed.2d 182 (1995) (holding that court may consider the text of a guilty plea and/or other documents that, coupled with the charging instrument, enable the court to determine that defendant's prior conviction constitutes a violent felony); *United States v. Gacnik*, 50 F.3d 848, 856 (10th Cir.1995) (holding that the court can examine the "charging papers, judgment of conviction, plea agreement or other statement by the defendant for the record, presentence report adopted by the court, and findings by the sentencing judge" to determine whether a prior offense was a crime of violence); *United States v. Smith*, 10 F.3d 724, 733–34 (10th Cir.1993) (per curiam) (holding that "a court can look beyond the statutory count of conviction in order to resolve a patent ambiguity caused by a broad state statute," however, the examination is limited to "the charging papers, judgment of conviction, plea agreement or other statement by the defendant for the record, presentence report adopted by the court, and findings by the sentencing judge") (citation omitted); *United States v. Strahl*, 958 F.2d 980, 984 (10th Cir.1992) (" '[W]here enhancement is sought on the basis of a conviction obtained through a guilty plea, the sentencing court may look to the underlying indictment or information and the text of the guilty plea to determine whether the defendant was charged with and admitted conduct which falls without question within the ambit of *Taylor*'s generic definition.' ") (citation omitted); *United States v. Adams*, 91 F.3d 114, 116 (11th Cir.) (per curiam), *cert. denied*, — U.S. —, 117 S.Ct. 623, 136 L.Ed.2d 546 (1996) ("[U]nder *Taylor* the government may use some means, other than a jury instruction, to establish that the prior conviction resulted from a generic burglary."); *cf. United States v. Barney*, 955 F.2d 635, 639–40 (10th Cir.1992) (holding that "where enhancement is sought on the basis of a conviction obtained through a guilty plea, the sentencing court may look to the underlying indictment or information and the text of the guilty plea to determine whether the defendant was charged with and admitted conduct wich falls without question within the ambit of *Taylor*'s generic definition," but "[t]o the extent that the district court considered convictions of Mr. Barney not noticed and only mentioned in the presentence report, it erred").

to determine whether the offense of which the defendant was convicted was a crime of violence. Instead, the court must consult other available indices to verify that the defendant was indeed convicted of a crime of violence.[10] These other indices may include the judgment of conviction, plea agreement or other statement by the defendant on the record, presentencing report adopted by the court, and the findings of the sentencing judge. Accordingly, we remand for a new sentencing hearing to determine whether Hill's 1976 conviction for attempted robbery was properly classified a "crime of violence." [11]

For the foregoing reasons, we reverse the district court's denial of Hill's motion to suppress and the district court's decision to set Hill's base sentencing offense level at 24, and remand for further proceedings consistent with this opinion.

*So ordered.*

RANDOLPH, Circuit Judge, concurring:

I agree that the sentencing judge must look beyond the indictment to decide whether Hill's prior conviction was for a crime of violence. But I wonder whether there is any longer a good purpose for treating this factual inquiry differently than the other factual inquiries routinely required by the Sentencing Guidelines.

The Supreme Court adopted a categorical approach to deciding whether a prior conviction was a "violent felony" within the meaning of 18 U.S.C. § 924(e), permitting the sentencing court to look at the "charging paper and jury instructions" only in a "narrow range of cases." *Taylor,* 495 U.S. at 602, 110 S.Ct. at 2160. After *Taylor,* we held in *Mathis* that "when deciding whether a prior conviction qualifies as a predicate offense, the sentencing court must look only to the statutory definition, not to the underlying facts or evidence presented." 963 F.2d at 408. This approach breaks down when the defendant's earlier conviction resulted from a plea agreement. And so we now join other circuits in concluding that an examination may be made of certain readily available court documents, including presentencing reports and plea transcripts. My question is why the sentencing court ought to be under any restrictions. Why, in other words, should the inquiry for the purposes of U.S.S.G. § 2K2.1(a)(2) be any more restricted than for other instances of sentencing enhancement?

The Guidelines have pretty much rendered obsolete the concern, relied upon in *Taylor,* 495 U.S. at 601, 110 S.Ct. at 2159–60, that sentencing hearings should not become minitrials. Under the bifurcated fact-finding scheme of the Guidelines, certain factual issues allocated to the sentencing phase can play a dispositive role in determining a defendant's sentence. A court must, for instance, consider all related acts proved by a preponderance of the evidence at sentencing, even if the defendant was not convicted of them. *See* U.S.S.G. § 1B1.3. A defendant's base offense level is increased according to "specific offense characteristics"—such as discharge of a firearm, more than minimal planning, or quantity of drugs involved. *See, e.g.,* U.S.S.G. § 2A2.2(b)(2)(A). Further adjustments in sentencing depend on the status of the victim, the defendant's role in the offense, and whether the defendant willfully obstructed justice. *See* U.S.S.G. §§ 3A1.1–3C1.2. Evidence about such matters may be presented to the court through statements of counsel, affidavits of witnesses, or evidentiary hearings. *See* § 6A1.3, comment. Furthermore, sentencing judges are not restrict-

10. Because "[t]he burden is on the government to prove facts in support of a sentence enhancement by a preponderance of the evidence," *United States v. Washington,* 115 F.3d 1008, 1010 (D.C.Cir.1997), it is the responsibility of the government to produce such documents as are necessary to establish that a prior offense can be properly designated a "crime of violence."

11. We recently held that "upon a resentencing occasioned by a remand, unless the court of appeals expressly directs otherwise, the district court may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result." *United States v. Whren,* 111 F.3d 956, 960 (D.C.Cir.1997). Accordingly, we note that on remand, the district court may consider any of the documents discussed above in determining whether the defendant's conviction for attempted robbery can be appropriately designated a "crime of violence."

ed to information that would be admissible at trial. *See* § 6A1.3(a). They may consider any information, provided it has "sufficient indicia of reliability to support its probable accuracy." *Id.*

The time has come to rethink the subject and to consider whether the same sort of evidentiary presentation permitted for other sentencing issues ought to be allowed to prove or disprove the violent nature of a defendant's previous offense. Having said this, I recognize that the rethinking might have to be done by the Sentencing Commission or by Congress. *See* maj. op. at 1062 & n.6.