[Cite as *State v. Campolo*, 2015-Ohio-3624.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| AARON J. CAMPOLO | : | Case No. 14-CA-104 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Licking County
                                  Court of Common Pleas, Case No.
                                  2014 CR 00152




JUDGMENT:                         Affirmed




DATE OF JUDGMENT:                 September 2, 2015




APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KENNETH W. OSWALT                         MICHAEL R. DALSANTO
Licking County Prosecutor                 3 South Park Place, Suite 220
                                          Newark, OH 43055
By: BRYAN R. MOORE
Assistant Prosecuting Attorney
20 S. Second Street, Fourth Floor
Newark, OH 43055

*Baldwin, J.*

{¶1}    Defendant-appellant Aaron Campolo appeals from the denial by the Licking County Court of Common Pleas of his Motion to Suppress. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}    On February 28, 2014, the Licking County Grand Jury indicted appellant on one count of aggravated possession of drugs (methamphetamine) in violation of R.C. 2925.11(A)(C)(1)(a), a felony of the fifth degree, one count of possession of drug abuse instruments in violation of R.C. 2925.12(A), a misdemeanor of the second degree, and one count of possession of marijuana in violation of R.C. 2925.11(A)(C)(3)(a), a minor misdemeanor. At his arraignment on April 15, 2014 and entered a plea of not guilty to the charges.

{¶3}    On May 27, 2014, appellant filed a Motion to Suppress the evidence seized from his person and his vehicle and statements made by appellant during a traffic stop. Appellant argued that the officers did not have a permissible basis to stop him and that even if they did, the pat-down of appellant's person was illegal. A hearing on such motion was held on June 25, 2014.

{¶4}    At the hearing, Officer Ryan Peterson of the Heath Police Department testified he was working on Friday, November 15, 2013 and responded to a complaint about damage to a Cadillac on Creekview Drive. Creekview Drive is a cul-de-sac with no outlet. According to the complaint, the driver's side window had been broken. Officer Peterson went to the address and spoke with David Freas and Kelsey Hess. Freas told him that he had heard noises the night before and that he had seen appellant's Jeep in the area. Freas and appellant knew each other. Officer Peterson testified that a window

in the Cadillac had been shot out.  Kelsey Hess showed the officer her cell phone which contained text messages that Hess said were from appellant.    The following testimony was adduced when Officer Peterson was asked about the messages:

{¶5}   Q:   If you could start, I think, at the bottom left (indiscernible due to officer moving in chair making noise).

{¶6}   A:    I'm going to have to get out here a little bit.  Bottom left says from Camp [appellant]:   "Bang bang the car is dead.   Lol.   Funny shit."    Sent from textnow.com.

{¶7}   Q:   And the one above it?

{¶8}   A:    And the one above it, top line there is kind of cut off.  Looks like it might say, "wtf uy2" not real sure, but then it goes on, "with you I'm done but for the fun of it, I'm fuckin dudes all the way up since I'm leaving – fuckin dude's car all the way up since I'm leaving."  Sorry.

{¶9}   Q:   And they indicated to you that was from Mr. Campolo's cell phone?

{¶10} A:    From Mr. Campolo somehow, because she [Hess]  was saying that the - -  the textnow.com, she was explaining it's like a free app, so that it came from some type of smart device that Mr. Campolo would have had access to.

{¶11}  Transcript of suppression hearing at 11-12.

{¶12} Officer Peterson testified that he believed that the crime of criminal damaging, which is a misdemeanor of the second degree, had been committed.  He testified that he obtained a written statement from Freas and that Freas, in the statement, described appellant's Jeep as a green Jeep Wrangler. According to him, Freas "told me that [appellant] started kind of driving toward the residence. He said he saw [appellant] point a gun out the – would be the passenger side window of his Jeep."

Transcript of suppression hearing at 13-14. Freas indicated that he had heard shots that he recognized as coming from a CO2 BB gun or pellet gun. Officer Peterson testified that he did not seek an arrest warrant at that time because it was Friday. He testified that he was going to try to find appellant over the weekend to hear his side of the story and that if he did not, he was going to complete his report and send it to the Law Director's Office.

{¶13} On Sunday, November 17, 2013, Officer Peterson, who was working, had an encounter with appellant. He was dispatched again to the same residence on Creekview Drive after Hess's mother called and said that she was the property owner or renter, that appellant and another male were there, and that she did not want them there. Upon arriving at the Creekview Drive address, the officer spoke with Hess who said that appellant had already left the residence. Shortly thereafter, Officer Peterson and Officer Fischer, who was in a separate cruiser, saw appellant on Creekview Drive in his green Jeep Wrangler. Officer Fischer, who was familiar with appellant, initiated a traffic stop. When asked, Officer Peterson testified that he did not observe any traffic violations, but that the stop was based on "the criminal damaging complaint and the fact that we've been asked to remove him from a home. He's been known to be in possession of some type of firearm, and he's now going back to that home where we were supposed to escort him from the home, and he had that firearm possibly with him." Transcript of suppression hearing at 24.

{¶14} After appellant was stopped, he was asked about the BB gun. Officer Peterson testified that he asked for consent to search appellant's vehicle for the gun and that appellant would not consent to a search of the front of his vehicle. Appellant then said that the officers could look in the back. Appellant and the two officers opened

the back and looked. According to Officer Peterson, appellant ultimately stated that he thought that the BB gun was at his parents' house on Franklin Avenue. As a result, the officer called appellant's mother and asked her to look for the BB gun.  She did not know where the gun was.

{¶15} Officer Peterson asked appellant if he would be willing to go to his mother's house and show the officer where the gun was. Appellant agreed to go. Because he believed that there might be a gun in appellant's vehicle, the officer did not feel that it was safe to allow appellant back into his own vehicle. The following is an excerpt from Officer Peterson's testimony:

{¶16}  Q:   So what's the safest thing you can do at that point?

{¶17}  A:    Safest point is at that time was, you know, because I'm not going to transport him up there unless he was willing to, but he sounded more willing to go if he could drive his own Jeep up there to the residence, so I though well, I'll let him drive his Jeep back up there, and I'll follow him up to his mother's residence, but I was at least going to check to make sure that it wasn't on his persons, because I figured at least if I'm following him, I could see if he was making any exaggerated movements, reaching for something.  I would know something's wrong, but if at least I checked his persons, I would know he didn't have it right there before I let him into the Jeep before we go - -

{¶18}  Transcript of suppression hearing at 28-29.

{¶19}  Officer  Peterson testified that he did not know that the gun was a pellet or BB gun and that it could have been a low caliber firearm.

{¶20}  The officers decided to pat appellant down first for weapons before letting him drive his Jeep. Officer Peterson then began a pat down search of appellant for weapons.  He asked appellant if he had anything on him and appellant indicated that he

had a needle in his pocket. Officer Peterson then removed the needle, which contained a brown liquid, from appellant's pocket. Appellant was then arrested for possession of drug abuse instruments. A search of appellant's car, which had been impounded, yielded the gun, drug paraphernalia and drugs.

{¶21} At the conclusion of the suppression hearing, the trial court denied the Motion to Suppress. The trial court's decision was memorialized in a Judgment Entry filed on June 25, 2014.

{¶22} On July 24, 2014, appellee added an unrelated felony four theft charge to the indictment.

{¶23} On November 4, 2014, appellant withdrew his pleas of not guilty and pleaded no contest to the original three counts and guilty to the theft offense. Pursuant to a Judgment of Conviction and Sentence filed on the same day, appellant was placed on community control for a period of five years. Appellant was sentenced to 209 days in jail with credit for time served and his driver's license was suspended for a period of twelve months.

{¶24} Appellant now raises the following assignments of error on appeal:

{¶25} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT ADMITTED EVIDENCE FOUND IN APPELLANT'S CAR, EVIDENCE FOUND ON APPELLANT'S PERSON, AND STATEMENTS MADE BY APPELLANT BECAUSE THE OFFICERS' INITIAL TRAFFIC STOP OF THE APPELLANT WAS ILLEGAL.

{¶26} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT ADMITTED EVIDENCE FOUND IN APPELLANT'S CAR, EVIDENCE SEIZED BY (SIC) THE APPELLANT'S PERSON, AND STATEMENTS MADE BY THE

APPELLANT BECAUSE THE EVIDENCE WAS THE FRUIT OF THE OFFICERS'
ILLEGAL PATDOWN.

I, II

{¶27} Appellant, in his two assignments of error, argues that the trial court erred in denying his Motion to Suppress.

{¶28} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long,* 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist .1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks,* 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf,* 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams,* 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶29} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein,* 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed

to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See, Williams, supra.* Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994).

{¶30} Appellant initially argues that the traffic stop in this case was illegal. The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 889 (1968). Because the "balance between the public interest and the individual's right to personal security" tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *United States v. BrignoniPonce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). In *Terry,* the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. See, *State v. Chatton,* 11 Ohio St.3d 59, 61, 463 N.E.2d 1237 (1984).

{¶31} As noted by the court in *State v. Grainreed*, 1st Dist. No. C-000173, 2001 WL 903457, "[u]nder the investigative-stop exception to the warrant requirement, a

police officer may, consistent with the state and federal constitutions, stop and briefly detain a person without a warrant, if the officer has a reasonable suspicion, based upon specific and articulable facts, that the suspect is wanted for past criminal conduct or is currently engaged in, or will in the future be engaged in, criminal conduct. See *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 695, fn. 2; *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1880; accord *State v.. Andrews* (1991), 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271, 1273, certiorari denied (1991), 501 U.S. 1220, 111 S.Ct. 2833." Id at 2.

{¶32} The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews,* 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991); *State v. Bobo,* 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988).

{¶33} We find, based on the facts of this case, that the officers had reasonable, articuable suspicion of a criminal violation to justify a *Terry* stop of appellant. As is stated above, on November 15, 2013, Officer Peterson responded to a complaint that the window of a vehicle on Creekview Drive had been broken. He found that the window had been shot out. David Freas told the officer that he had seen appellant's green Jeep the night before in the area and that he had seen appellant point a "CO2 BB gun or pellet gun" out the window and heard shots going off." Transcript of suppression hearing at 14. In text messages to Hess, appellant, as noted by the trial court, appeared to be "threatening and menacing." Transcript of suppression hearing at 84.

{¶34} On Sunday, November 17, 2013, the two officers were dispatched to the same residence on Creekview Drive in response to a complaint that appellant and

another man were on the property and Hess' mother did not want them there. When the officers arrived on the scene, appellant was not at the house. However, they observed appellant's Jeep on Creekview Drive, which is a cul-de-sac, and stopped appellant in the vicinity of Hess' residence.

{¶35} We concur with the trial court that "it is entirely appropriate based on what they knew from both the 15th and the dispatch report from earlier on the 17th that [appellant's] not welcome there. They [the officers] have reasonable articuable suspicion to stop him, to do an investigatory detention to find out why he's there." Transcript of suppression hearing at 85. The officers were not certain at the time that the gun used to shoot out the car windows was, in fact, a BB or pellet gun. As noted by appellee, they found appellant, who had made threats in text messages, "in the exact location he was the lone suspect in a crime that occurred two days earlier in the exact same car."

{¶36} Appellant also argues that the trial court erred in denying his Motion to Suppress because the pat down search of appellant was illegal.

{¶37} Authority to conduct a pat down search does not flow automatically from a lawful stop and a separate inquiry is required. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Fourth Amendment requires an officer to have a "reasonable fear for his own or others' safety" before frisking. *Id.* Specifically, "[t]he officer ... must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.' " *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), *citing Terry, supra,* 392 U.S. at 27, 88 S.Ct. 1868. Whether that standard is met must be determined from the standpoint of an objectively reasonable police officer, without reference to the actual motivations of the individual

officers involved. *United States v. Hill,* 131 F.3d 1056, 1059 (D.C.Cir.1997), *citing Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶38} The frisk, or protective search, approved in *Terry* is limited in scope to a pat-down search for concealed weapons when the officer has a reasonable suspicion that the individual whose behavior he is investigating at close range may be armed and dangerous. *Terry,* supra, 392 U.S. at 27..

{¶39} In the case sub judice, the officers were concerned that appellant, who was alleged to have shot out windows in a vehicle two days before, may be armed and posed a threat to their safety. Appellant refused to give the officers consent to search the front of his vehicle and told the officers that "if the gun was anywhere, it would be in the back, and he said that we could look in the back,…" Transcript of suppression hearing at 26. Officer Peterson testified that he was concerned that there was a gun in the car because appellant "doesn't want us up there for a reason, because that gun's within his reach." Transcript of suppression hearing at 26. Appellant later changed his story and said that he thought that the gun was at his parent's house. Based on the foregoing, the officer believed that the gun was in appellant's vehicle and that it was not safe to allow appellant back into his vehicle without patting him down. Based on the foregoing, we find that the pat down search of appellant was not illegal.

{¶40} Accordingly, we find that the trial court did not err in denying appellant's Motion to Suppress. Appellant's two assignments of error are, therefore, overruled.

{¶41}  Accordingly, the judgment of the Licking County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Wise, J. concur.