UNITED STATES, Appellee,

v.

Julian W. LEWIS, Jr., Mess Management Specialist Third Class, U.S. Navy, Appellant.

No. 98–0335.
Crim.App. No. 96–0807.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 13, 1999.

Decided Aug. 20, 1999.

SULLIVAN, J., delivered the opinion of the Court, in which GIERKE and EFFRON, JJ., joined. CRAWFORD, J., filed a dissenting opinion, in which COX, C.J., joined.

For Appellant: *Lieutenant John D. Holden,* JAGC, USNR (argued); *Lieutenant Albert L. DiGiulio,* JAGC, USNR.

For Appellee: *Major Clark R. Fleming,* USMC (argued); *Colonel K.M. Sandkuhler,* USMC, and *Commander Eugene E. Irvin,* JAGC, USN (on brief); *Colonel Charles Wm. Dorman,* USMC.

Judge SULLIVAN delivered the opinion of the Court.

Appellant was tried by a special court-martial composed of officer and enlisted members at the Naval Legal Service Office, Pearl Harbor, Hawaii, on February 27 and 28, 1996. Contrary to his pleas, he was found guilty of the wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a bad-conduct discharge, confinement for 3 months, and reduction to E-1. On April 4, 1996, the convening authority approved his sentence as adjudged and, except for the bad-conduct discharge, ordered it executed. However, as an act of clemency, the convening authority suspended all confinement in excess of 70 days for a period of 12 months from the date of trial. On December 9, 1997, the Court of Criminal Appeals affirmed the findings of guilty and the sentence in an unpublished opinion.

This Court granted review on two assigned issues on July 30, 1998. They are:

I. WHETHER THE MILITARY JUDGE'S ERRONEOUS RULING THAT THE PRESENTATION OF AN INNOCENT INGESTION DEFENSE WAS CONTINGENT UPON CORROBORATING WITNESSES SUBSTANTIALLY PREJUDICED THE CONSTITUTIONAL RIGHT OF APPELLANT TO TESTIFY IN HIS OWN BEHALF AND PRECLUDED HIM FROM PRESENTING HIS DEFENSE.

II. WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE DENIED THE DEFENSE REQUEST TO GIVE AN INSTRUCTION ON VOLUNTARY INTOXICATION.

We hold that the military judge misread RCM 701, Manual for Courts–Martial, United States (1995 ed.),[1] *see United States v. Jones,* 49 MJ 85, 90–91 (1998), and erred by repeatedly preventing appellant from presenting his defense of innocent ingestion at this court-martial. *See generally United States v. Coffin,* 25 MJ 32, 33 (CMA 1987) (recognizing military accused's right to fully present his defense); *United States v. Hodge,* 19 F.3d 51, 52–53 (D.C.Cir.1994). Furthermore, because the judge's erroneous rulings prejudicially chilled appellant's right to fully present his defense, we conclude that a rehearing is warranted.[2] *See generally United States v. Menge,* 48 MJ 490, 492 (1998) (where prejudice substantial, reversal required whether constitutional or non-constitutional error); *see United States v. Miller,* 47 MJ 352, 359–60 (1997). In light of our disposition of the first granted issue, the second granted issue need not be addressed.

Appellant was charged with one specification of wrongfully using cocaine on or about October 27, 1995, at Oahu, Hawaii. The prosecution's case rested entirely on urinalysis evidence and the testimony of a command urinalysis coordinator and a drug-testing expert from the Navy Drug Screening Laboratory at San Diego. This expert opined that a chemical found in appellant's urine was only present when cocaine and alcohol were consumed concurrently, and that cocaine dissolved in alcohol was not visibly detectable.

At the start of appellant's court-martial, the military judge made the following statement for the record after he accepted appellant's request for trial by enlisted members:

> MJ: *Let me summarize an [RCM] 802 conference* counsel and I had on 26 February 1996, *where we discussed a potential innocent ingestion defense.* We basically discussed what it was and the potential that if the defense was going to put that on, *it's an affirmative defense in which she*

---

1. All Manual provisions are cited to the version applicable at the time of trial. The 1998 version is unchanged, unless otherwise indicated.

2. The convening authority may decide such a rehearing is impractical and dismiss the charge. Art. 67(e), Uniform Code of Military Justice, 10 USC § 867(e).

*would have to put on evidence of persons and places to which the events of innocent ingestion took place.* We discussed that defense counsel had not proffered any names or places and the trial counsel indicated that he would be objecting to any kind of innocent ingestion defense because none of the information has been met as required by the RCM. I guess when we get to the motion stage, we'll discuss whether or not you want to continue on with that motion or not, Lieutenant Bocock.

(Emphasis added.)

Shortly thereafter, defense counsel withdrew her previously submitted oral motion for notice of an innocent ingestion defense, as follows:

MJ: Accused and counsel, please rise. Petty Officer Lewis, I now ask you how do you plead, but before receiving your pleas, I advise you that any motions to dismiss any charge or to grant any other relief should be made at this time. Lieutenant Bocock?

DC: The defense will withdraw the one motion that was previously submitted.

MJ: The motion we discussed in the 802?

DC: Yes, that's correct.

MJ: *So there will be no motion for notice of innocent ingestion defense?*

DC: *That's correct, sir.*

Later, during the testimony of appellant, the military judge called for an Article 39(a) [3] session outside the presence of the members. The record states:

MJ: The reason I called a 39(a) session, I noticed you have the diagram there [referring to DE A for ID]. And, yes, I'm going to ask you what's the purpose of this diagram.

DC: Just to aid in his testimony, sir.

MJ: What is going to be the basis of this testimony?

DC: I'm basically just trying to get him to describe what the club looks like, layout of the club.

TC: Sir, I haven't seen the document, yet.

DC: [Hands DE A for ID to the trial counsel].

TC: Sir, looking at the document, I notice that in addition to there being a diagram, are notations of "CX," "BX," and "AX." *We're being presented with a floor-plan for a club, which tends to describe the circumstances. I think we're getting awfully close to innocent ingestion here.*

MJ: *Well, that's my concern. You've withdrawn notice of innocent ingestion defense, yet it appears that's what you're trying to do.* What is the testimony you intend to elicit from the accused?

DC: *The reason why the defense was withdrawn is because it's my understanding that it would not be a defense unless there are witnesses who could specifically state that they did something to the individual's drink.* However, it was my understanding that I could still present the circumstances of the evening where something could have happened. And that's all I'm trying to get out of this witness as far as the circumstances of that evening, what kind of club.

MJ: Well, what kind of circumstances are we talking about?

DC: Well, the nature of the club, how crowded the club was, where people may have been sitting, where the witness, Petty Officer Lewis, may have been sitting. Again, just laying out what the circumstances and the atmosphere of the club were on that evening.

TC: Sir, can we have an offer of proof, then, as to why there are AX, BX, and CX marked on this diagram.

DC: The witness has premarked this exhibit indicating the locations where he was sitting that evening, and that's what represented.

TC: Sir, the Government's position is this is arising—particularly with this document—to an innocent ingestion defense. We've got a circumstance, Lieutenant Bocock has just offered time and now we've got place, and none of that was in the original notice of innocent ingestion. In fact, that was withdrawn. The Govern-

---

3. UCMJ, 10 USC § 839(a).

ment moves that this sort of testimony not be allowed.

DC: May I respond to that, sir?

MJ: You may.

DC: First of all, the notice did contain the name of the club, the location of the club, and the date, so that information was known. But, additionally, again, the charge is being offered to help in the testimony, that's the only purpose.

MJ: *I'll let you talk about where he was on those two nights, but if counsel gets any closer to innocent ingestion, at that point, I'll cut you off.*

DC: Sir, can I ask, then, for a clarification on what is—

MJ: As I understand it, you want to have the witness testify that he was—I went to these clubs at certain nights; I sat here; I sat there; I sat there; there were lots of people; it was · dark; it was crowded. What else?

DC: That's basically all I'm going to ask.

MJ: Are you going to mention that this is a known place for drug users?

DC: No, sir.

MJ: Are you intending to get into anything like that?

DC: No, sir. I'm just, again, going to ask what was the atmosphere of the club, how crowded the club was, where he was sitting. Again, I'm just asking for clarification as far as what is acceptable and what is affirmative—

MJ: *Well, I'll allow you to indicate where he was that evening and what he did. But, again, if you start threading over into this innocent ingestion defense, I'm going to call a 39(a) session awfully quick.*

DC: Okay, sir.

(Emphasis added.)

———

Appellant argues before this Court that the military judge improperly restricted his right to present his defense at this court-martial. This improper restriction, he asserts, stems from the trial judge's misreading of RCM 701 and his resulting rejections of appellant's profferred defense of "innocent ingestion." He contends that the trial judge

erroneously prevented him from testifying to his belief that his drink was spiked, and to the circumstances supporting that belief, unless he had corroborating witnesses who actually tampered with his drink or saw someone else do it. We hold that the trial judge's reading of RCM 701 was incorrect.

 We initially note that a conviction for wrongful drug use under Article 112a requires the prosecution to prove beyond a reasonable doubt that appellant knowingly used drugs. *See United States v. Harper,* 22 MJ 157, 162 (CMA 1986) (definition of wrongful includes knowing and conscious use of drugs); para. 37(c)(5), Part IV, Manual, *supra.* In proving knowledge, the prosecution can rely on a permissive inference of wrongfulness, including knowledge, "which has long been recognized by military law as flowing from proof of the predicate fact of use of the drug." *United States v. Ford,* 23 MJ 331, 333 (CMA 1987); para. 37(c)(10). If defense evidence suggesting innocent or unknowing ingestion is introduced, "the prosecution runs an additional risk of acquittal" because it must persuade the factfinder to disbelieve this defense evidence or discount it in deciding to draw the permissive inference of knowledge. *Ford, supra* at 335.

 Turning next to RCM 701, it states in pertinent part:

(b) *Disclosure by the defense.*

\* \* \*

(2) *Notice of certain defenses.* The defense shall notify the trial counsel before the beginning of trial on the merits of its intent to offer the defense of alibi, innocent ingestion, or lack of mental responsibility, or its intent to introduce expert testimony as to the accused's mental condition. *Such notice by the defense shall disclose,* in the case of an alibi defense, the place or places at which the defense claims the accused to have been at the time of the alleged offense, and, *in the case of an innocent ingestion defense, the place or places where, and the circumstances under which the defense claims the accused innocently ingested the substance in question, and the*

*names and addresses of the witnesses upon whom the accused intends to rely to establish any such defenses.*

## Discussion

Such notice should be in writing except when impracticable. *See* RCM 916(k) concerning the defense of lack of mental responsibility. *See* RCM 706 concerning inquiries into the mental responsibility of the accused. *See* Mil.R.Evid. 302 concerning statements by the accused during such inquiries. If the defense needs more detail as to the time, date, or place of the offense to comply with this rule, it should request a bill of particulars. *See* RCM 906(b)(6).

(Emphasis added.)

We do not read this Manual provision as establishing a requirement for corroborative witnesses or direct evidence as a condition for raising the defense of innocent ingestion. Such requirements would be inconsistent with our case law and other Manual provisions. *See Harper, supra* at 163 (accused testified on the possibility of accidental ingestion without corroborative eyewitnesses); *Ford, supra* at 336 (accused suggested possible explanation of wife secretly planting drugs in his food without corroborative eyewitnesses); RCM 918(c) (findings may be based on direct or circumstantial evidence). Instead, we more reasonably construe this rule as requiring notice of witnesses to innocent ingestion, other than an accused, *only if* an accused intends to call such witnesses to establish this defense at trial. Finally, even if the language of RCM 701(b)(2) might be construed to require such independent and direct proof, other language of this rule expressly states that "[t]his rule shall not limit the right of the accused to testify in the accused's behalf." RCM 701(g)(3)(D). Therefore, the appellate court below correctly suggested,[4] and the Government on appeal correctly conceded, judicial error.

■ Having determined that the trial judge misread RCM 701, we must next consider the effects of his erroneous view of the law on appellant's court-martial. *See United States v. Sullivan,* 42 MJ 360, 363 (1995) (a military judge abuses his discretion if his exercise of that discretion is influenced by an incorrect view of the law); *see generally Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 402, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Here, the military judge, as a result of his misunderstanding of the law, improperly limited appellant's ability to convey his version of the facts concerning innocent ingestion to the court-martial members. *Cf. United States v. Ford, supra; United States v. Harper, supra* (accused were allowed to fully convey their version of facts concerning unknowing drug use and innocent ingestion). Moreover, the military judge substantially prevented appellant's counsel from properly framing the issue of innocent ingestion for the members by barring any reference to this defense in his opening statement and closing argument. *See* RCM 913(b) and 919. Finally, the military judge failed to give any instructions on the defense of innocent ingestion as required by our case law. *See Ford, supra* at 336; *compare* § 5–11–4 *with* § 3–37–2(d) n. 2, Military Judges' Benchbook at 750, 356 (Dept. of the Army Pamphlet 27–9) (30 September 1996) (specific instruction on mistake of fact in drug cases placing burden of persuasion on Government).[5]

The final question we must address is whether these erroneous rulings by the trial judge sufficiently prejudiced appellant to require reversal of his conviction for wrongfully using cocaine. If the above errors, either separately or together, amounted to a constitutional violation, the Government is required to show that it was harmless beyond a reasonable doubt. *See Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). If the above errors were non-constitutional, appellant must show

---

4. The appellate court below, 50 MJ 214, opined that "the military judge appear[ed] to have confused the nature of the affirmative defense of innocent ingestion with the requirement to give notice before raising it." It later referred to the trial judge's advice, which the defense "rel[ied] ostensibly on," as "incorrect." Unpub. op. at 5.

5. Appellant's court-martial occurred before this version of the Military Judges' Benchbook was published.

that they substantially prejudiced his material rights. *See United States v. Barnes,* 8 MJ 115, 116–17 (CMA 1979). We conclude that reversal of his conviction is required under either standard. *See Menge,* 48 MJ at 492.

As a starting point in resolving this question, we note that the Government characterized the judge's action in this case as a *"faux pas* committed by the military judge [which] was a minor error in the trial process." Answer to Final Brief at 9. Seizing upon the decision of the appellate court below, it argues the error was harmless beyond a reasonable doubt because appellant "did have the opportunity to suggest this affirmative defense before the members through the testimony of [appellant] that his beers were unguarded for periods of time." Unpub. op. at 5. Such a rationale, in our view, is insufficient to show harmless error in this case.

Admittedly, appellant was allowed to testify as to his visits to the karaoke clubs on the nights in question, his voracious drinking of beer, and his repeated trips to the bathroom leaving his drinks unguarded and mingled with the drinks of other bar patrons. Moreover, he was also permitted to argue that these circumstances created the possibility that someone put something in his beer without his knowledge, or that he picked up someone else's drink. Finally, he was allowed to argue and the members were instructed that the Government had to prove beyond a reasonable doubt that he knowingly used cocaine. Nevertheless, for several reasons, we conclude that appellant was prejudicially chilled in the presentation of his defense case. *See Coffin,* 25 MJ at 34; *Hodge,* 19 F.3d at 52–53; *cf. United States v. Reveles,* 41 MJ 388, 392 (1995) (no chilling of defense where other evidence of defense admitted and appellant made no showing of what else would have been admitted).

First, we note that the judge's erroneous RCM 701 ruling prevented appellant from introducing evidence which could have rebutted the Government's circumstantial case on the closely-related issue of knowledge. The judge allowed the prosecution to show through cross-examination of appellant that he had no enemies at these bars on the nights in question. It then permitted prosecution argument that the spiking of his drink (and hence unknowing use) was improbable because cocaine was expensive and there was no evidence to show a motive for any person at the bar to contaminate his drink. The military judge, however, relying on his erroneous view of RCM 701, contrarily ruled that defense counsel could not introduce any evidence that some person at the bar may have had a motive to contaminate appellant's drink on these nights.

The record clearly reflects the excluded defense evidence in this regard:

DC: Yes, sir. When Petty Officer Lewis was testifying yesterday, the Government was allowed to get into the fact that no one in the bar may have had a motive to put something in his drink. He was allowed to ask questions such as: Did you have a fight with anyone? Did you have a problem with anyone? *Then, on redirect, defense, myself, tried to get into the possibility that someone might have had that motive which the Government had opened the door to that and I was not allowed to ask questions on that. If I could, I would at least like to, for the record, make an offer of proof.*

MJ: What exactly are you saying?

DC: As far as the offer of the proof—

MJ: No. I don't under—

DC: Or what the Government got into it—

MJ: Yes.

DC: On the cross-examination of the witness, the Government had asked whether or not anyone in the bar were to have a fight with anyone in the bar, whether anybody in the bar had a problem with you, to which the witness stated "no." *And then on redirect, I attempted to get out the fact that stuff was taken from Petty Officer Lewis and I was not allowed to ask that question.*

MJ: And?

DC: *The objection being that the Government essentially opened the door by trying to dispel that anybody would have. had a motive.*

MJ: So, you're saying, basically, his wallet or something was stolen?

DC: That's correct, sir.

MJ: And the proffer you're saying is?

DC: *Essentially, sir, the testimony would have been that money was stolen in the amount of $80.00 and his military I.D. was stolen also.*

MJ: And how is that relevant?

DC: *Well, again, sir, the Government opened the door by attempting to draw it out that no one in the bar would have had a motive to do anything to spike Petty Officer Lewis' drink.*

MJ: Well, how does the motive—

DC: Well—

MJ: For argument's sake, how does the motive to spike someone's drink correlate with—

DC: Well, sir—

MJ: A motive to steal someone's wallet.

DC: *Well, sir, if someone was intending to steal something from Petty Officer Lewis, that would indicate, first of all, that someone did have a problem with him, someone did know he was in the military, so, again, it would—*

MJ: *No, I'm not going to allow that. I'm not going to allow it. That doesn't appear—well, in a 403 balancing thing—balancing—I don't see the relevance of that outweighing any kind of—well, at—the relevance is that it's so tenuous, all it's going to do is just be an undue waste of time and mislead the members of court.*

DC: Sir, like I said, I just wanted to state for the record what the proffer of testimony would have been. Counsel fully agrees that it would not have been relevant had the Government not have opened the door in the first place as far as dispelling possible motives of individuals in the bar.

MJ: Lieutenant Fisher?

TC: Well, sir, our response to that is that it isn't relevant and also by offering such testimony that's essentially an ingestion defense of which we haven't received notice. Had we received notice of that—

MJ: *Well, I don't even look at that as innocent ingestion.* I don't think it's relevant. I don't get the lead from someone stealing somebody's wallet, to someone spiking someone's drink, that someone

to—*and, therefore an innocent ingestion defense, I don't get that at all. I just think it would be a waste of the court's time. I'm not going to allow you to go into that matter.* Your objection, though, is noted for the record.

(Emphasis added.)

The military judge's erroneous ruling broadly denied the defense relevant evidence which could have also rebutted the prosecution's case for drawing a permissive inference of knowledge. *See Ford,* 23 MJ at 335; *see generally United States v. Banks,* 36 MJ 150, 166 (CMA 1992).

Turning to the defense of innocent ingestion, the rulings of the military judge prevented appellant from presenting probative evidence and persuasive argument to the members on this more specific defense theory. *See Ford, supra* at 336. The averred fact that $80 cash and his military identification card were stolen from him in one of the civilian bars on one of the nights in question might reasonably suggest that he was an accessible target for surreptitious wrongdoing by third parties. Such testimony, if believed, also arguably indicates that the thief harbored ill will towards appellant, which might have led him to also tamper with appellant's drink. Finally, if believed by the members, this motive and opportunity evidence could provide a concrete factual basis for the members accepting appellant's otherwise speculative and colorless assertion that some unknown person for some unknown reason may have placed cocaine in his drink. *See United States v. Hodge, supra; cf. Harper,* 22 MJ at 163.

Finally, we note that the military judge, as a result of his misunderstanding of RCM 701, failed to give instructions on innocent ingestion, which would have favored the defense. *See Ford, supra* at 335–36; § 5–11–4, Military Judges' Benchbook, *supra; see generally,* 1 W. LaFave and A. Scott, *Substantive Criminal Law* § 1.8 n. 44 at 75 (1986). As noted above, this Court held in *Ford* that the Government faces an additional risk of non-persuasion when defense evidence of innocent ingestion is introduced in a particular case. The members were not instructed that

the Government had this burden with respect to the circumstantial defense evidence of innocent ingestion actually admitted in this case; nor could they be with respect to that defense evidence which was erroneously excluded. Similar instructional failures have been found to be prejudicial to a defendant. *See United States v. Jones,* 7 MJ 441, 443 n. 1 (CMA 1979); *see also United States v. Williams,* 23 MJ 362, 368 (CMA 1987) (instructions not adequate to rule out members erroneous use of evidence).

In conclusion, the question whether appellant knowingly used drugs as charged was presented to the members in this case. Moreover, the defense was allowed to introduce some circumstantial evidence suggesting unknowing ingestion of drugs and argue on this basis that the prosecution had not proved knowledge beyond a reasonable doubt. However, the defense was prohibited from introducing relevant evidence rebutting the prosecution's pivotal contention that no one in the karaoke bars had a motive for deliberately tampering with appellant's drink. *See Van Arsdall,* 475 U.S. at 679, 106 S.Ct. 1431 (all inquiry into a witness' bias improperly prohibited); *cf. United States v. Stewart,* 104 F.3d 1377, 1384 (D.C.Cir.1997). Moreover, appellant himself was prohibited from testifying to his belief that his drink had been spiked and to the particular circumstances supporting his belief. *See United States v. Scheffer,* 523 U.S. 303, 315–17, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998); *see also Wong v. Money,* 142 F.3d 313, 325 (6th Cir. 1998) (evidentiary rule not unconstitutional because accused was allowed to testify to his version of facts (all relevant details) concerning charged offenses). Viewing these errors in the context of this case and in light of Supreme Court and our Court's precedent, we conclude that reversal is required. *See United States v. Miller,*; and *United States v. Coffin* both *supra; cf. United States v. Reveles, supra.*

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is reversed. The findings of guilty and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

CRAWFORD, Judge, with whom COX, Chief Judge, joins (dissenting):

Although trial defense counsel withdrew her notice of intent to offer the defense of innocent ingestion and was subsequently warned not to pursue the defense, having withdrawn it, I cannot even begin to imagine what more she could have introduced than she actually did. Thus, and for the following reasons, I would affirm the lower court's decisions on both Issues I and II.

## DISCUSSION—ISSUE I

*Requirement for Corroborating Witnesses*: The first question is whether the military judge erred in requiring that the defense of innocent ingestion be raised by testimony of witnesses other than appellant himself.

Assuming that the military judge did impose such a requirement on the defense counsel, I concur with the majority that that was error. RCM 701(b)(2), Manual for Courts–Martial, United States (1995 ed.), requires only that, "in the case of an innocent ingestion defense, the place or places where, and the circumstances under which the defense claims the accused innocently ingested the substance in question, and the names and addresses of the witnesses upon whom the accused intends to rely to establish such [a defense]" must be disclosed to the Government before the court-martial begins. Nowhere does the rule require the defense to rely upon any witnesses to establish the defense.

However, I find it far from obvious that the military judge created such a requirement. The military judge summarized the February 26, RCM 802 conference at which the parties and the military judge discussed defense counsel's notice of the innocent ingestion defense, as follows:

We basically discussed what it was and the potential that if the defense was going to put that on, it's an affirmative defense in which she would have to put on evidence of persons and places to which the events of innocent ingestion took place. We discussed that defense counsel had not prof-

fered any names or places and the trial counsel indicated that he would be objecting to any kind of innocent ingestion defense because none of the information has been met as required by the RCM. I guess when we get to the motion stage, we'll discuss whether or not you want to continue on with that motion or not, Lieutenant Bocock.

Neither counsel objected to this summary or asked to add anything to it. *See* RCM 802(b). Nothing in this summary indicates that the military judge was prepared to preclude this defense because of a lack of witnesses. In fact, the summary merely indicates that the military judge was inclined to have the defense notice litigated on the record.[1]

The matter was never litigated on the record because defense counsel voluntarily withdrew the motion. Later, at an Article 39(a)[2] session called by the military judge when it appeared that defense counsel was pursuing the defense despite having withdrawn her notice, defense counsel stated:

> The reason why the defense was withdrawn is because it's my understanding that it would not be a defense unless there are witnesses who could specifically state that they did something to the individual's drink. However, it was my understanding that I could still present the circumstances of the evening where something could have happened.

Again, there is nothing in this statement that indicates the military judge had previously told defense counsel that she could not pursue this defense without corroborating witnesses. She only indicated her own misinterpretation of the rule, without indicating a source for her misunderstanding.

Finally, in her affidavit submitted to the Court of Criminal Appeals, defense counsel states that, "at the 802 Session held on 26 February 1996, the Military Judge stated that he would not allow me to present evidence of innocent ingestion because I could not produce evidence of an individual who may have put cocaine in MSSR Lewis' drink on the nights in question, or words to that effect." This statement is inconsistent with what is revealed on the record of defense counsel's reasons for withdrawing her notice and the contents of the 802 conference. Were this first question determinative, I would conclude that the case must be remanded for a *DuBay*[3] hearing, so that affidavits could be secured from trial counsel and the military judge and other evidence could be analyzed. However, I do not believe that this is the end of the Court's inquiry.

*Constitutional Error*: Assuming that there was error, the next question is whether it rises to the level of a constitutional error. The majority declines to answer this question, deciding that if it is constitutional error, the Government has failed to meet its burden of showing the error was harmless beyond a reasonable doubt, and if it is not a constitutional violation, appellant has made a sufficient showing that the error substantially prejudiced his material rights. 51 MJ 380.

Denying an appellant the opportunity to testify fully and present evidence in his defense, as is alleged in the first granted issue, is an error of constitutional proportion. *See Alicea v. Gagnon*, 675 F.2d 913 (7th Cir.1982)(Wisconsin's alibi-notice statute's preclusion sanction abridged petitioner's Fifth, Sixth, and Fourteenth Amendment right to testify in his own defense; however, the error was harmless given the overwhelming evidence against him and, most significantly, that he was not ultimately precluded from offering the evidence); *see also Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988)(Compulsory Process

---

1. It is worth noting that the notice offered by the defense was indeed meager. It stated that the defense was "not offering any specific location, specific circumstances or specific witnesses to testify as to where the innocent ingestion took place"; that the "[c]ircumstances surrounding the possible innocent ingestion are unknown," but that it "could have" occurred at Club Chance or the Princess Pub on "25 October 1995"; and that there are "no witnesses who will testify as to any direct knowledge of the accused innocently ingesting any cocaine." *See* Appendix.

2. UCMJ, 10 USC § 839(a).

3. *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967).

Clause grants a criminal defendant the right to present evidence on his behalf but does not bar a court from applying the preclusion sanction for noncompliance with discovery rules); *United States v. Johnson,* 970 F.2d 907 (D.C.Cir.1992)(preclusion sanction does not require a least-restrictive-alternative analysis or a showing of bad faith on the part of the defense).

*Harmless Error:* The final question, again, assuming this error, is whether the Government has met its burden of showing that the military judge's error was harmless beyond a reasonable doubt.

The majority assigns error to the military judge in: (1) denying defense counsel the opportunity to convey appellant's version of the facts through appellant's testimony of a possible motive someone might have had to spike his drink at one of the clubs, and the circumstances surrounding his possible innocent ingestion of cocaine; (2) preventing defense counsel from framing the defense in her opening statement and closing argument; and (3) failing to give an instruction on innocent ingestion. I find all of these alleged errors to be harmless beyond a reasonable doubt.

Appellant testified on his own behalf. Defense counsel elicited from appellant that he was at two clubs on each of the two days preceding his urinalysis. Appellant described the clubs as dark, loud, and crowded. The military judge allowed defense counsel to introduce a schematic drawing of the Princess Pub, the larger of the two clubs and the one at which appellant spent the most time on the nights in question, including marks representing the three places at which appellant sat. Appellant further testified that he was drinking beer from both a bottle and a glass, as were others around him at the bar. He testified that he was at the bar location for approximately 45 minutes on the night before the urinalysis. He also testified that he got up from his seat more than half a dozen times to pay for karaoke music, use the restroom, and order food; that he always left his unfinished beer at his place; that he would finish the beer when he returned; and

that the beer would not seem altered when he finished it, just warmer.

In addition, appellant testified that he had been to both clubs at least ten times each before these evenings. He stated that he felt pretty comfortable at these clubs and that he had made no enemies. Appellant testified that he went to the bars alone but that he recognized the bartender and was on friendly terms with her. He also testified that on the nights in question, he spoke to the bartender and a few female patrons. Furthermore, he testified that on each night in question, he drank between a half and three-quarters of a fifth of vodka before going out and had approximately a dozen beers at the clubs.

*Motive to Spike Appellant's Drinks:* The Government's cross-examination of appellant included questions intended to elicit whether he had any enemies at the clubs that might have intentionally spiked his drinks. Appellant indicated that he did not know anyone at the clubs; that he was there alone; and that he only had intermittent small talk with other patrons and the staff. When asked if anyone there knew appellant was in the Navy, his response was that it was pretty obvious he was a sailor, but that he did not recall anyone asking him that and he doubted he had told anyone. Redirect consisted almost entirely of the following:

DC: Now, on the 26th, when you went to the Princess Pub, did you notice anything missing from your possession?

ACC: Yes. That was the night that I got $80.00 stolen from me.

DC: What night was that?

ACC: The 26th.

TC: Objection. Relevance.

MJ: Sustained.

DC: Was anyone talking to you when you were at the Princess Pub on the 26th?

ACC: The waitresses, people. Sometimes you sing a song, or whatever, and you just strike up a conversation of how good it was or how bad it was, nothing in length.

DC: Nothing further, sir.

The remainder of appellant's defense consisted of witnesses and documentary evidence of appellant's good military character and reputation for truthfulness.

Defense counsel did not raise the stolen wallet issue again until the following morning during an Article 39(a) session, as follows:

DC: Yes, sir. When petty Officer Lewis was testifying yesterday, the Government was allowed to get into the fact that no one in the bar may have had a motive to put something in his drink. He was allowed to ask questions such as: Did you have a fight with anyone? Did you have a problem with anyone? Then, on redirect, defense, myself, tried to get into the possibility that someone might have had that motive which the Government had opened the door to that and I was not allowed to ask questions on that. If I could, I would at least like to, for the record, make an offer of proof.

* * *

DC: On the cross-examination of the witness, the Government had asked whether or not anyone in the bar were to have a fight with anyone in the bar, whether anybody in the bar had a problem with you, to which the witness stated "no." And then on redirect, I attempted to get out the fact that stuff was taken from Petty Officer Lewis and I was not allowed to ask that question.

MJ: And?

DC: The objection being that the Government essentially opened the door by trying to dispel that anybody would have had a motive.

MJ: So, you're saying, basically, his wallet or something was stolen?

DC: That's correct, sir.

MJ: And the proffer you're saying is?

DC: Essentially, sir, the testimony would have been that money was stolen in the amount of $80.00 and his military I.D. was stolen also.

MJ: And how is that relevant?

DC: Well, again, sir, the Government opened the door by attempting to draw it out that no one in the bar would have had a motive to do anything to spike Petty Officer Lewis' drink.

* * *

MJ: For argument's sake, how does the motive to spike someone's drink correlate with—

DC: Well, sir—

MJ: A motive to steal someone's wallet?

DC: Well, sir, if someone was intending to steal something from Petty Officer Lewis, that would indicate, first of all, that someone did have a problem with him, someone did know he was in the military, so again, it would—

* * *

DC: Sir, like I said, I just wanted to state for the record what the proffer of testimony would have been. Counsel fully agrees that it would not have been relevant had the Government not have opened the door in the first place as far as dispelling possible motives of individuals in the bar.

* * *

MJ: Well, I don't even look at that as innocent ingestion [evidence]. I don't think it's relevant. I don't get the lead from someone stealing somebody's wallet, to someone spiking someone's drink, that someone to—and, therefore an innocent ingestion defense, I don't get that at all.

Setting aside that defense counsel's proffer was untimely, there is nothing faulty in the military judge's analysis. Evidence that appellant's wallet was stolen at the Princess Pub on October 26 is not relevant as to why an acquaintance, let alone a perfect stranger, would want to put cocaine in appellant's drink without him knowing. Mil.R.Evid. 401, Manual, *supra* (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable tha[n] it would be without the evidence.").

As the Government's expert witness, Mr. Cecil Hornbeck testified that people mix cocaine in their alcoholic drinks because it enhances the cocaine high and diminishes the drunken effect. This is viewed positively by drug users. It has no apparent malevolent

use, like drugging a person into an incapacity to fight off a sexual attack or a robbery attempt.

The Government suggested as much in its closing argument when trial counsel noted that cocaine is expensive and, therefore, it is "counter-intuitive that someone would go about—drugging an expensive substance—the perfect stranger [sic]." Defense counsel may have come to a similar realization because she did not respond to that part of the Government's argument. Instead, defense counsel used the evidence she had presented to suggest that in that dark, crowded club, with all the similar looking glasses of beer surrounding appellant's, he could have just picked up someone else's intentionally-spiked drink by accident.

Evidence that whoever stole his wallet also stole his military I.D. and might have had a motive to spike his drink because he was a sailor is similarly unconvincing. Furthermore, appellant testified that he thought it was obvious to everyone there that he was a member of the military, without their having the proof of his I.D. card.

Thus, I would conclude that this evidence not only was properly excluded pursuant to Mil.R.Evid. 401, but also presents a significantly less persuasive strategy than that actually used by defense counsel in her closing argument.

*Appellant's Testimony*: Once appellant had begun to testify about how dark and crowded the clubs were, and about the drawing of the Princess Pub's layout, the military judge called an Article 39(a) session *sua sponte*. His concern was that defense counsel was getting awfully close to the innocent ingestion defense she had withdrawn. Defense counsel indicated that the evidence she wanted to present was of "the nature of the club, how crowded the club was, where people may have been sitting. Where the witness, Petty Officer Lewis, may have been sitting. Again, just laying out what the circumstances and the atmosphere of the club were on that evening."

Despite trial counsel's objections, the military judge told defense counsel that she could present this evidence: "As I under-

stand it, you want to have the witness testify that he was—I went to these clubs at certain nights; I sat here; I sat there; I sat there; there were lots of people; it was dark; it was crowded. What else?" Defense counsel said that was basically all she wanted to present and that she would not be getting into whether this club might be known to be frequented by drug users.

As the above discussion indicates, not only was defense counsel able to present all of this evidence through appellant's testimony, but she was also able to use it in a persuasive fashion in her closing argument. I find incredible defense counsel's post-trial statement that, "because of the Judge's statements that he would cut me off if I started to present evidence of innocent ingestion, I was not able to get out as much detailed information on the atmosphere of the club, the demeanor of the people at the club, what other people in the club were drinking and how they were acting."

Other than appellant saying straight out that he knew that people at this club spiked their drinks with cocaine—which would violate what defense counsel explicitly told the military judge she would not do and also potentially play to the Government's tactical advantage—I am at a loss for what more detail defense counsel could have presented. There is no magical incantation necessary to make a defense a defense. The military judge permitted defense counsel to present evidence which subtly suggested a viable innocent ingestion alternative to the members. *See Gagnon*, 675 F.2d at 925.

Furthermore, a specific instruction on the defense of innocent ingestion could not have focused the members' attention on the issue of knowing ingestion any more than the instruction given on knowledge did. The military judge made clear to the members that appellant could not have knowingly ingested cocaine if someone had slipped it into his drink without his awareness.

### DISCUSSION—ISSUE II

Because I find that any error by the military judge with regard to Issue I was harm-

less beyond a reasonable doubt, I must, unlike the majority, resolve Issue II.

Where a military judge refuses to give a requested instruction, this Court reviews for an abuse of discretion. *United States v. Damatta–Olivera,* 37 MJ 474, 478 (CMA 1993), *cert. denied,* 512 U.S. 1244, 114 S.Ct. 2760, 129 L.Ed.2d 875 (1994). "The test to determine if denial of a requested instruction constitutes error is whether (1) the charge is correct; (2) 'it is not substantially covered in the main charge'; and (3) 'it is on such a vital point in the case that the failure to give it deprived defendant of a defense or seriously impaired its effective presentation.'" *Id.,* quoting *United States v. Winborn,* 14 USCMA 277, 282, 34 CMR 57, 62 (1963); *see also United States v. Poole,* 47 MJ 17, 19 (1997).

Defense counsel requested an instruction on voluntary intoxication, which was rejected by the military judge. Though appellant's only characterization of his level of sobriety on the nights in question was that he was "feeling great," he testified that he had at least half a fifth of vodka and a half a case of beer on each night. It is unclear over what period of time appellant drank this alcohol. Furthermore, he indicated that, at the time of both the urinalysis and the court-martial, he weighed 185 pounds and stood at 5'7".

The Government makes a convincing argument that appellant's memory seems to be unimpaired by this heavy drinking. In addition, although Mr. Hornbeck testified that appellant's urinalysis results indicated cocaethylene in his system, a drug created when alcohol and cocaine are ingested concurrently, he also testified that the substances do not have to be mixed together to be considered concurrently ingested. Mr. Hornbeck also testified that mixing the two substances enhances the cocaine high but diminishes drunkenness. He further testified that, given defense counsel's hypothetical that the drugs were orally ingested 24 hours prior to the urinalysis, the level evidenced in the testing[4] indicated that a "recreational dose ... designed to get a person high" was ingested.

Voluntary intoxication is generally not a defense; however, evidence of it can be introduced to raise "a reasonable doubt as to the existence of actual knowledge ... if actual knowledge ... is an element of the offense." RCM 916(*l*)(2); *see also United States v. Hensler,* 44 MJ 184, 187 (1996) (voluntary intoxication is not a defense to a general-intent crime but may raise reasonable doubt as to actual knowledge).

Assuming, without deciding, that there was some evidence to support this instruction, and that the military judge erred in not giving it, I would find that there was no prejudice. *See Damatta–Olivera,* 37 MJ at 480 (Sullivan, C.J., concurring in the result) (the second and third prongs of the test essentially test for prejudice). The members were sufficiently instructed that appellant's use must have been both knowing and conscious. Had they chosen to believe appellant's alternative scenario of innocent ingestion, they would have implicitly believed that he was too drunk to know which drink was his and that his beer was having an unusual effect on him. The instructions as given permitted them to do so.[5]

Thus, I would affirm the lower court's decision.

---

4. Testing showed 10489.6 ng/ml. The legal cut-off used by the Navy lab to confirm as positive for cocaine is 100 ng/ml.

5. I note somewhat parenthetically that there was evidence not presented to the members, and which the Government chose not to pursue, that appellant's urine sample also tested positive for THC (marijuana). Though the level was below the legal cut-off for a positive result, Mr. Hornbeck stated that the sample "has a better than 99 percent chance of confirming positive for THC." In his addendum to his RCM 1105 matters, appellant wrote that he is "coping with [his] substance abuse problem," though he does not indicate whether that is alcohol or drug abuse or both.

APPENDIX

UNITED STATES NAVY
SPECIAL COURT-MARTIAL
ISLAND JUDICIAL CIRCUIT

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | NOTICE OF DEFENSE OF |
| ) | INNOCENT INGESTION |
| Julian W. Lewis ) | |
| MS3, USN ) | |

1. Pursuant to the Rules for Courts-Martial 701(b)(2) the defense hereby gives notice to the government of the intent to offer the defense of innocent ingestion.

2. The defense is not offering any specific location, specific circumstances or specific witnesses to testify as to where the innocent ingestion took place.

3. The accused could have innocently ingested the cocaine in Club Chance at 98-199 Kam Highway, Suite C7, Aiea, HI or at the Princess Pub at 98-199 Kam Highway, Aiea, HI on 25 October 1995.

4. The Circumstances surrounding the possible innocent ingestion are unknown.

5. There are no witnesses who will testify as to any direct knowledge of the accused innocently ingesting any cocaine.

 MONIQUE J. BOCOCK
 LT, JAGC, USNR
 DETAILED DEFENSE COUNSEL

Dated: 22 February 1996

_____

 CERTIFICATE OF SERVICE

I hereby certify that a copy of this notice of defense of innocent ingestion was served on LT T.J. Fisher, JAGC, USNR, the Government Counsel in the above captioned case, on 22 February 1996.

 MONIQUE J. BOCOCK
 LT, JAGC, USNR
 DETAILED DEFENSE COUNSEL