*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
### FOR THE ARMED FORCES

---

**UNITED STATES**
Appellee

**v.**

**Bryce T. ROAN, Senior Airman**
United States Air Force, Appellant

**No. 24-0104**
Crim. App. No. 22033

Argued February 26, 2025—Decided September 15, 2025

Military Judge: Mark F. Rosenow

For Appellant: *Annie W. Morgan*, Esq. (argued); *Captain Jordan L. Grande* and *David P. Sheldon*, Esq. (on brief); *Major Matthew L. Blyth*.

For Appellee: *Lieutenant Colonel Jenny A. Liabenow* (argued); *Colonel Matthew D. Talcott* and *Mary Ellen Payne*, Esq. (on brief); *Colonel Zachary T. Eytalis*.

Judge SPARKS delivered the opinion of the Court, in which Chief Judge OHLSON, Judge MAGGS, Judge HARDY, and Judge JOHNSON joined.

---

Judge SPARKS delivered the opinion of the Court.

A special court-martial composed of officer members convicted Appellant, contrary to his pleas, of one charge and specification of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2018). The military judge sentenced Appellant to a reduction to E-2, restriction to the limits of Little Rock Air Force Base for forty-five days, hard labor without confinement for three months, and a reprimand. The convening authority disapproved the adjudged restriction to base but approved the remainder of the adjudged sentence. The United States Air Force Court of Criminal Appeals (AFCCA) affirmed Appellant's conviction. *United States v. Roan*, No. ACM 22033, 2024 CCA LEXIS 6, at \*20, 2024 WL 87633, at \*7 (A.F. Ct. Crim. App. Jan. 8, 2024) (unpublished).

The first granted issue requires us to decide whether "the lower court's erroneous resolution of a question of law—finding that withheld evidence was immaterial and there was no prejudice to appellant—violated *Brady v. Maryland*, 373 U.S. 83 (1963)." We hold that the lower court erred and that Appellant was prejudiced by this misapplication of *Brady*. The second granted issue asks us to decide whether "the lower court's erroneous resolution of a question of law—finding that the Government did not violate Appellant's rights under Rule for Courts-Martial (R.C.M.) 701(a)(6)—violated binding precedent set by this Court." Our disposition of Issue I moots Issue II. For these reasons, we set aside the decision of the AFCCA.

## I. Background

On July 6, 2021, Appellant was ordered to provide a urine sample as part of a unit-wide inspection ordered by his commander after the Fourth of July weekend. Appellant and N.W. were friends and roommates and attended the same social function over the holiday weekend. Subsequently, both Appellant and N.W. tested positive for cocaine. Because of their relationship, investigations into their alleged wrongful use of cocaine

were run concurrently and their cases were considered "companion cases." During the investigation, both were questioned by the Security Forces Office of Investigations (SFOI). Appellant invoked his Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2018), rights, but N.W. waived his rights and made a statement. In part, N.W. indicated that he did not use cocaine. He theorized that the positive test might have been the result of pre-workout powder that a third roommate, D.B., purchased while deployed. Following these interviews, Captain W.A., the Chief of Military Justice, asked SFOI to seek corroborating evidence of cocaine use.

The Government referred a single charge and specification of wrongful use of cocaine against Appellant on November 9, 2021. Ten days after referral of the charge, on November 19, 2021, trial defense counsel submitted Defense Discovery Request #1, requesting exculpatory evidence, impeachment evidence, and evidence material to the preparation of the defense. The defense requested "[a]ny evidence in the Government's possession, including trial counsel or any military authorities, that may reasonably tend to: 1) Negate the Accused's guilt." The Government responded it would "provide[] the case file information for [N.W.]." In addition to exculpatory material, the defense requested, inter alia, (1) all personal or business notes prepared by agents or investigators; (2) any video or audio recording taken in the case; and (3) any derogatory information about any investigator in the case. In its response, the Government stated, "A copy of the entire [SFOI] case file will be provided to Defense." The Government stated that it would request derogatory data for SFOI investigators involved in the investigation.

Appellant's court-martial took place from December 6 through December 9, 2021. Appellant filed two motions: a defense motion requesting reconsideration of a previously filed and denied motion to compel a particular expert in the field of forensic toxicology and a motion to compel discovery. Outstanding discovery included unit sweep documents and derogatory data for at least one

Government witness. Although trial counsel represented that "the government has complied with the discovery requirements to look for derogatory data," counsel later conceded that derogatory data remained outstanding and affirmatively stated that "the government will make efforts to get that information." Trial counsel provided derogatory data for one witness. However, information relating to "testing registries of the remainder of the accused unit involved in the sweep" had been destroyed and were determined to be unrecoverable. Derogatory data for SFOI investigators was neither disclosed nor produced. Ultimately, Appellant was convicted solely based on the positive urinalysis. There was no corroborating evidence of cocaine use. The Government relied on the permissive inference of knowing and wrongful use to prove guilt. The defense did not present evidence at findings.

Also on November 9, 2021, charges were referred against N.W. and he was tried at a special court-martial convened on January 24, 2022. At trial, N.W. filed a motion to dismiss the charge against him because of prosecutorial misconduct. Specifically, N.W. alleged that the Government failed to disclose and produce exculpatory evidence. Despite not granting N.W.'s requested relief, the military judge found that the Government was "grossly negligent" and "failed to comply with their discovery and notice obligations."

On July 20, 2021, SFOI had interviewed N.W. about his positive urinalysis, and he told the investigator, "I have no idea, why would I . . . I take pre-workout, I don't know if that could make me pop . . . my roommate brought [the pre-workout] back from Africa. I ran out of mine and took his." SFOI did not take any further investigative steps, and the original Report of Investigation (ROI) was published on July 23, 2021. Upon review of the ROI, the Chief of Military Justice asked SFOI to conduct further investigation. On September 14, 2021, a separate investigator interviewed N.W. and D.B. and, during the interview, D.B. discussed purchasing online a pre-workout powder made by Blackstone Labs while deployed. He stated that he stored

the pre-workout powder in a central location in the home he shared with N.W. and Appellant. D.B.'s interview was never disclosed to Appellant.

On either September 14 or 15, a third investigator (Inv), N.M. conducted an internet search of Blackstone Labs' pre-workout products and found only one pre-workout powder available for sale online through Blackstone Labs. This particular pre-workout powder contained a stimulant called dimethylhexylamine (DMHA). Inv N.M. contacted Drug Demand Reduction Program (DDRP), who informed him that DMHA was on the banned substance list and provided, via email, the "names of the two Medical Review Officers (MRO) who could discuss whether the banned substance could cause a positive result for cocaine." DDRP also sent Inv N.M. the banned substance list. That same day, Inv N.M. called one of the MROs and did not document that conversation but did recall the MRO stating it was "possible if taken in the right quantities, within the right timeframe, that the stimulant 'DMHA' could cause a positive result for the metabolite of cocaine on a urinalysis." None of this information was documented in any case file. However, Inv N.M. relayed the results of his investigation to the base legal office, which determined there was sufficient evidence to open a case against D.B. for an alleged violation of Article 92, UCMJ, 10 U.S.C. § 892 (2018), using a substance on the banned substances list.

The SFOI ultimately decided not to pursue the Article 92, UCMJ, charges against D.B. and N.W., and that case was closed. Despite SFOI policy that requires files to be maintained for seventy-five years, Inv N.M. deleted the electronic case file and the hard copy case file on the investigation into N.W. and D.B.'s alleged Article 92, UCMJ, violation. The second investigator and Inv N.M. were subsequently verbally counseled in relation to their conduct regarding the deletion of D.B.'s case file and the second interview of N.W. No documentation on either verbal counseling was ever provided by trial counsel to Appellant's defense counsel. At N.W.'s trial, the military

judge ruled the conversations between SFOI and the MRO and the conversation between SFOI and DDRP were "arguably exculpatory" and, regarding SFOI's destruction of case files, stated "the lack of documentation definitely calls into question the training, ethical practices and integrity of investigators as those conversations were never documented." Further, the military judge found that "the Government failed to comply with their discovery and notice obligations." The military judge concluded that the Government was "grossly negligent, but not willful or intentional." The military judge found a continuance was an adequate remedy and denied the motion to dismiss. N.W. was acquitted in his eventual court-martial for an Article 112a, UCMJ, violation.

### AFCCA opinion

Before the AFCCA, Appellant asserted that the Government violated his due process rights under *Brady* and discovery rights under R.C.M. 701(a)(6). *Roan*, 2024 CCA LEXIS 6, at *2, 2024 WL 87633, at *1. In its response, the Government attached the declaration of Major (Maj) A.N. Despite being trial counsel for both Appellant and N.W.'s courts-martial and a supervisory attorney, Maj A.N. claimed that "no member of the trial counsel [team] was aware that Inv [N.M.] had done this research or that he failed to document it." Maj A.N.'s only explanation for the Government's negligence was that his office was "dealing with minimal manning" at the time.

Appellant attached a declaration from his trial defense counsel in which she explained that, at the time of trial, the defense was:

> [N]ot aware the [SFOI] performed any investigation into [D.B.]. We were not aware that [D.B.]'s supplements were on a "banned substance list." We were not aware that SFOI located [an MRO] that opined that the substance in [D.B.]'s possession, taken at the right time and in the right quantities, could cause a positive result for the metabolite of cocaine. We were not aware that [D.B.]'s file had been destroyed.

She went on to explain that such information could have been valuable, especially evidence that an MRO believed the pre-workout powder could create a false positive. Additionally, the circumstances could have provided impeachment material for "SFOI, the MRO, and the process more generally."

In its analysis, the AFCCA assumed without deciding that trial counsel should have known of the pre-workout powder investigation. *Roan*, 2024 CCA LEXIS 6, at \*14, 2024 WL 87633, at \*6. However, the AFCCA held the evidence was not material under *Brady* because there was no "reasonable probability" of a different result. *Id.* at \*16, 2024 WL 87633, at \*6. It rejected the value of the pre-workout powder because, to the AFCCA, the evidence only linked the pre-workout powder to N.W., not to Appellant. *Id.*, 2024 WL 87633, at \*6. It also rejected the importance of the evidence as general impeachment evidence because the investigators did not testify at trial. *Id.* at \*18, 2024 WL 87633, at \*6. The AFCCA also rejected Appellant's claim that the Government violated R.C.M. 701(a)(6), focusing its analysis on a purported lack of evidence that Appellant used the pre-workout powder. *Id.* at \*17-18, 2024 WL 87633, at \*6. The AFCCA held that, even if there was a violation, there was no prejudice under a reasonable probability standard. *Id.* at \*18, 2024 WL 87633, at \*7. The AFCCA also found no prosecutorial misconduct reasoning that the prosecutor's actions were not knowing or intentional. *Id.*, 2024 WL 87633, at \*7. Thus, the lower court affirmed the findings and sentence. *Id.* at \*20, 2024 WL 87633, at \*7.

## II. Discussion

### A. The lower court erroneously found that evidence of the protein powder was immaterial and did not prejudice Appellant in violation of *Brady*

*Brady*, 373 U.S. at 90, establishes that the Government must turn over any evidence in its possession that might cast doubt on an accused's guilt. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material

either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id. at* 87. We review discovery and disclosure process violations under a two-step analysis: "first, [the Court must determine] whether the information or evidence at issue was subject to disclosure or discovery; second, if there was nondisclosure of such information, [the Court tests] the effect of that nondisclosure on the appellant's trial." *United States v. Roberts*, 59 M.J. 323, 325 (C.A.A.F. 2004).

Establishing a *Brady* violation requires an appellant show: (1) that the evidence at issue was favorable, either because of its exculpatory nature or value as impeachment evidence; (2) that the favorable evidence was suppressed, either intentionally or inadvertently, by the government; and (3) the failure to disclose resulted in prejudice, i.e., the evidence was material. *See Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *United States v. Hawkins*, 73 M.J. 605, 610 (A. Ct. Crim. App. 2014).

### 1. The withheld evidence was material and favorable to SrA Roan's defense

"[F]avorable evidence" under *Brady* includes "evidence . . . that, if disclosed and used effectively, . . . may make the difference between conviction and acquittal." *United States v. Bagley*, 473 U.S. 667, 676 (1985) (citation omitted). "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009) (citation omitted). "[A] showing of materiality does not require demonstration by a preponderance that the disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). A reasonable probability does not mean that the defendant "would more likely than not have received a different verdict with the evidence," but only that the likelihood of a different result is great enough to "undermine confidence in the outcome of the trial." *Id.* (citation omitted) (internal quotation marks omitted).

"[T]he duty to disclose such evidence is applicable even though there has been no request by the accused . . . and that duty encompasses impeachment evidence as well as exculpatory evidence." *Strickler*, 527 U.S. at 280 (citations omitted).

In evaluating materiality, the AFCCA based its decision on the fact that there is no "indication in the record that Appellant used his roommate's supplement," thus the lower court found "no reasonable probability that disclosure of the MRO's purported statement regarding DMHA would have produced a different result in Appellant's trial." *Roan*, 2024 CCA LEXIS 6, at *16, 2024 WL 87633, at *6. However, this is an incorrect way to analyze the issue. The question is not what was raised at trial, but what could have been raised had this information been disclosed. In *Kyles*, the defendant's capital murder conviction and death sentence were affirmed on direct appeal after the government failed to turn over seven pieces of exculpatory evidence. 514 U.S. at 428-29. Ultimately, the Supreme Court overturned his conviction based on how the defense could have used this evidence and not whether said evidence would be outcome determinative. *Id.* at 454.

Further, all withheld evidence must be considered cumulatively. *Id.* at 437. The list of withheld evidence in this case, as correctly stated by Appellant, is as follows:

> (1) [I]n the common area of Appellant's apartment there was workout powder that was manufactured by Blackstone Labs;
>
> (2) some pre-workout powder from Blackstone Labs contained a banned substance—DMHA;
>
> (3) despite containing a banned substance, Blackstone Labs marketed itself to appear FDA approved and, as a result, had been the target of a Department of Justice investigation.
>
> (4) a MRO told a Security Forces investigator that DMHA could cause a false positive for cocaine;

9

(5) interviews with SSgt N.W. and SSgt [D.B.] were videotaped and the tapes were not provided to the defense;

(6) SFOI destroyed SSgt [D.B.'s] case file and deleted all references to the Article 92, UCMJ, investigations in SSgt N.W.'s case file; and

(7) two Security Forces investigators were counselled for violating SFOI policies and destroying case files.

When viewed cumulatively, it is clear that Appellant was denied a potent defense strategy—the innocent ingestion defense. Being able to argue this defense would have rebutted the permissive inference of knowing and wrongful use instruction given by the military judge.[1] The AFCCA erred in assuming that to put forward an innocent ingestion defense there must have been something in the record connecting Appellant to the supplement.[2] In *United States v. Lewis*, this Court reversed a conviction for the wrongful use of cocaine based on the military judge's erroneous ruling that the innocent ingestion defense requires the defense to put on corroborating evidence. 51 M.J. 376, 380 (C.A.A.F. 1999). "The very nature of an innocent ingestion defense means that [the defendant] could not prove the time or place of his innocent ingestion but could only suggest possible explanations." *United States v. Brewer*, 61 M.J. 425, 429 (C.A.A.F. 2005). The defense of innocent ingestion inherently requires raising

---

[1] The military judge's instruction was as follows:

Use of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary. However, the drawing of this inference is not required. Knowledge by the accused of the presence of the substance and knowledge of its contraband nature may be inferred from the surrounding circumstances. However, the drawing of any inference is not required.

[2] However, as an aside, we would note that the very reason this information is not in the record is because it was withheld. *See Glossip v. Oklahoma*, 145 S. Ct. 612, 623 n.4 (2025).

doubt in the minds of members that the presence of the drug in the defendant's system came from "a knowing and wrongful use of the drug." *Id.*

Appellant is not required to show a link to himself and the protein powder. He need only point to it as a potential source to make a valid innocent ingestion claim, and, as such, provide a basis for the members to question whether to draw the inference that Appellant's drug use was wrongful.

### 2. The Government did not turn over any of this evidence in the run-up to the trial

At the AFCCA, the Government relied on Maj A.N.'s testimony that "no member of the trial counsel [team]" was aware of the SFOI investigation into the workout powder. However, even if that was the case, that alone is not dispositive. "It is well accepted that a prosecutor's lack of knowledge does not render information unknown for *Brady* purposes." *United States v. Perdomo*, 929 F.2d 967, 970 (3d Cir. 1991); *see also United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996) (finding it "improper for a prosecutor's office to remain ignorant about certain aspects of a case or to compartmentalize information so that only investigating officers, and not the prosecutors themselves, would be aware of it"). "This prohibition against willful ignorance has special force in the military justice system, which mandates that an accused be afforded the 'equal opportunity' to inspect evidence." *United States v. Stellato*, 74 M.J. 473, 487 (C.A.A.F. 2015) (first citing Article 46, UCMJ, 10 U.S.C. § 846 (2012); and then citing R.C.M. 701(e)). SFOI jointly investigated the Article 112a, UCMJ, violations in both N.W. and Appellant's cases for use of a banned substance at the direction of and in coordination with the Chief of Military Justice in the legal office. Maj A.N., as a supervisory attorney and trial counsel in both Appellant and N.W.'s courts-martial, certainly should have known what joint investigative steps were taken in the "companion cases" he was prosecuting. Maj A.N. stated that it would have been difficult to "wall off" one trial team from the other due to staffing issues. Under the most

charitable interpretation, Maj A.N. remained willfully ignorant as to SFOI's investigation into the pre-workout powder. If Maj A.N. had exercised reasonable diligence in preparing the Government's case, he would have been aware of the steps taken by SFOI, the destruction of evidence, and the investigators' derogatory data. Thus, he was responsible for turning over to the defense responsive material and exculpatory information. In addition, there are some cases where "the loss or destruction of evidence is . . . so critical to the defense as to make a criminal trial fundamentally unfair." *Arizona v. Youngblood*, 488 U.S. 51, 61 (1988) (Stevens, J., concurring in the judgment). Such is the case here.

## III. Conclusion

The decision of the United States Air Force Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing is authorized.